372 So.2d 76 (1979)
THE FLORIDA BAR, Complainant,
v.
Clemens HAGGLUND, Respondent.
No. 53459.
Supreme Court of Florida.
June 7, 1979.
Thomas R. Hess, Bar Counsel, Daytona Beach, and H. Glenn Boggs, II, Asst. Staff Counsel, Tallahassee, for complainant.
Andrew Baron, Orlando, and R.J. Beckham, of Beckham, McAliley & Proenza, Jacksonville, for respondent.
PER CURIAM.
This disciplinary proceeding against a member of The Florida Bar is before the court upon report and recommendation of a referee and the petitions of both parties for review. Art. V, § 15, Fla. Const.; Fla.Bar Integr.Rule, art. XI, Rule 11.06(9), 11.09.
Following a finding of probable cause by a Florida Bar grievance committee, a disciplinary trial was held before a referee. The referee's essential findings of fact as to the items of misconduct alleged in the bar's complaint are as follows:
In 1967, Mrs. Evelyn Robitaille purchased an auto tag business in Dade County, Florida. Mrs. Robitaille represented by no attorney other than Respondent received $7,500 from the Respondent which is evidenced both by a written agreement drawn by the Respondent and a promissory note to the Respondent, and gave the previous owner of the business a mortgage for $7,500. Respondent did not advise Mrs. Robitaille that they had conflicting interests. At this late date, more than ten years after the entry into said business arrangement, it is impossible to ascertain the exact nature of the business arrangement between the Respondent and Mrs. Robitaille, but that a finding is made that the Respondent was something more than a mere lender to the business, and in fact, had managerial control over the business, regularly frequented the office of the auto tag business, had certain financial responsibilities in conjunction with said business, and provided regular business and financial consultation to said business, and during the said entire period of time was also the attorney for said *77 business, charging attorney's fees for his services. The contention that the Respondent was a partner of Mrs. Robitaille in this business has neither been proved nor disproved. Respondent refers to himself as an investor.
Respondent invested $7,500 in this business, obtaining from Mrs. Robitaille both an option to purchase and a promissory note, Exhibits C and D.
The Respondent candidly admits that he did not advise or recommend that the complaining witness obtain independent legal advice and complaining witness confirms that she did not seek independent legal advice in this matter.
If Respondent ever intended to become a partner in the business, he exercised his authority only by the actual acts of management and physically attending to the affairs of the business. He never took the required examination imposed by Dade County upon persons engaged in this business and never exercised his option and the business terminated with a loss to all concerned as a result of a burglary in 1969.
That while the business was being operated, Respondent functioned in the dual capacity of attorney, for which he received fees, and an optionholder who took an active part in the management of the business.
The company that bonded the auto tag agency brought suit against Mrs. Robitaille as she was technically the sole owner of the business venture as reflected by all public documents pertaining to same.
During the course of the business, Mrs. Robitaille made several payments to the Respondent towards the repayment of the loan or investment which had been made to her, and checks evidencing said payment have been admitted into evidence. Specifically, checks dated December 30, 1967, in the amount of $500, January 29, 1968, in the amount of $500, and October 15, 1968, in the amount of $762.36, were all delivered to the Respondent as repayment upon said loan or investment. Additional evidence was presented to the Referee pertaining to repayment of said loan or investment, which evidence included numerous checks testified to by Mrs. Robitaille as having been payment upon said loan or investment. It is impossible to ascertain which part, if not all, of said payments were in fact made as repayment toward said loan or investment to the Respondent, but that a finding of fact is made that at least some part thereof, even though the exact amount thereof cannot be ascertained, was additional repayment towards said loan, if in fact it was a loan as distinguished from an investment, and that additional parts thereof included several payments to the Respondent which paid his fees for legal services rendered by him to the business.
After the automobile tag agency's license was revoked and the business ceased operations, the Respondent and Mrs. Robitaille had a discussion regarding the termination of said business, and during said discussion, the Respondent advised Mrs. Robitaille that as the business was now defunct, he would not require or request her to make good on the balance of said $7,500, and that the Respondent did subsequently take a deduction from his Federal Income Tax Return due to the failure of Mrs. Robitaille to repay him the balance of the $7,500.
More than four years later in late 1973, the mother of Mrs. Evelyn Robitaille died. Shortly after the death of Evelyn Robitaille's mother, Mrs. Robitaille called the Respondent and advised him of her death and told the Respondent that she would like to see him to confer with him about her mother's Will and her mother's estate. It was through this telephone conversation that the Respondent learned that Mrs. Robitaille stood to inherit a house from her mother.
Subsequent to that telephone conversation, the Respondent did in fact visit the home of Mrs. Evelyn Robitaille, and at Mrs. Robitaille's home in the presence of Mr. Larry McGill, the Respondent conferred with Mrs. Robitaille about the death of Mrs. Robitaille's mother and the *78 existence of her mother's Will, the status of the suit of the bonding company against Mrs. Robitaille upon the bond pertaining to the auto tag agency theft, and the intention of the Respondent to file a lawsuit against Mrs. Robitaille shortly thereafter. Regarding those matters which were conversed and those things that transpired at the home of Mrs. Evelyn Robitaille, specific findings of fact are made:
By the testimony of the Respondent, Clemens Hagglund, and by his own admission, he had, prior to the visit to the home of Mrs. Evelyn Robitaille, formed an intent to sue her and pursue said litigation to final judgment and collection thereon.
That a substantial conflict of interest existed between the Respondent, Clemens Hagglund, and Mrs. Evelyn Robitaille. Said conflict may have existed as early as the entry into of the business relationship between the Respondent and Mrs. Robitaille in February of 1967, and definitely existed at the time that Clemens Hagglund formed his intent to sue Mrs. Robitaille and was in existence at the time that Clemens Hagglund went to the home of Mrs. Robitaille.
Upon the visit to the home of Mrs. Robitaille, the Respondent should have advised her to obtain independent counsel not selected or recommended by the Respondent, to fully represent her and defend her, in any claim that he would commence against her, but that he did not in fact do this. That Clemens Hagglund should not have continued to advise Mrs. Robitaille regarding any legal matters and should not have discussed the estate and the Will with Mrs. Robitaille, and should not have taken the Will with him to make arrangements with counsel of his selection for representation in said estate. That although the testimony is in conflict on this point, I find that the Respondent told Mrs. Robitaille not to actively defend any suit filed against her or to ignore his claim, and allow a default judgment to be entered against her so that his claim would be superior in time to that of a certain other claimant. This finding is reached because the Respondent, Clemens Hagglund, testified that while visiting Mrs. Robitaille's home, he advised her that he planned to sue her on the unrepaid loan. Yet the Respondent also testified that he and Mrs. Robitaille were still friendly and that she had asked him to deliver her mother's Will to another attorney, a friend of the Respondent, as a favor so that this other attorney could handle the probate of her mother's estate. In weighing the contradictory testimony, I find that it is unlikely that Mrs. Robitaille would have remained friendly with the Respondent and ask the Respondent to deliver a copy of her mother's Will to an attorney who was a friend of the Respondent unless the Respondent and Mrs. Robitaille had arrived at some understanding regarding the lawsuit filed by Respondent against Mrs. Robitaille to the effect that it was a "friendly" lawsuit, or at least somehow not a threat to Mrs. Robitaille. Respondent assured Mrs. Robitaille that the judgment would not be enforced against her.
That in April of 1974, the Respondent did in fact file a complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, styled Hagglund v. Robitaille, Case No. 74-9643.
In May of 1974, the Respondent executed and subsequently filed an Affidavit of Proof in his case against Mrs. Robitaille stating, "That no payment, either of interest or principle (sic) has ever been made by the Defendant, EVELYN ROBITAILLE." The Respondent either knew or should have known with the use of reasonable diligence that said Affidavit was incorrect at the time it was prepared and filed.
That Respondent received a Final Judgment by default in the case of Hagglund v. Robitaille on August 20, 1974, for $7,500 plus $1,000 attorney's fees and *79 costs of $32.50, for a total judgment of $8,532.50, which Final Judgment was subsequently assigned to his son, Paul H. Hagglund in 1976.
That subsequent to the entry of the Final Judgment as referenced above in paragraph 16, the Respondent admits that he learned that the Affidavit sworn by him in support of the default judgment was false and incorrect and that he acknowledged at the time of the Grievance Committee hearing that certain payments had been made towards the loan or investment, so that the amount of the Final Judgment was greater than it should have been, if any judgment at all was justified, but that the Respondent, who was then practicing law with his son under the law firm name of Hagglund, Matthews and Hagglund, was aware of continued efforts to levy and execute upon said judgment which was incorrect, in excess of amount, and did nothing to correct said judgment or notify the court of the infirmities therein.
During the course of his own testimony, Respondent acknowledged that although the judgment had been assigned to his son, his son was his law partner, that he still had control over said judgment, and intended to satisfy it in part to whatever extent Mrs. Robitaille could affirmatively prove that she made payment on the note or investment prior to the burglary and the demise of the business above referred to. I find that this offer on the part of Respondent is largely meaningless as a great portion of the transactions between the parties was cash. There are in existence today no adequate records as to how much was paid to Respondent or whether the Respondent was in effect a creditor or an investor and whether Respondent has received all or most of his loan or investment or just those individual items referred to in paragraph 10 above.
I find that in taking these courses of action the Respondent was acting in a callous and indifferent manner and using the superior position of an attorney and adviser to a person of lesser education and lesser sophistication to take an unfair advantage over said person.
Our review of the record reveals that the referee's findings of fact are supported by the evidence.
The referee recommended that the respondent be found guilty of violating Florida Bar Integration Rule, article XI, Rule 11.02(3)(a), and Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(5) and 5-104(A). We approve this recommendation and find the respondent guilty of these violations.
The referee's report includes a recommendation as to the disciplinary measures to be applied. Fla.Bar Integr.Rule, art. XI, Rule 11.06(9)(a)(3). The referee recommends that the respondent be suspended from the practice of law for a period of two months and thereafter
until he may offer proof that any judgment that he has recovered in the aforesaid suit of Hagglund v. Robitaille shall be satisfied, discharged or vacated without cost to Mrs. Robitaille and that she shall have been reimbursed for any payment that she shall have made or to any portion of that judgment upon which execution shall have been entered... .
Upon our review of the circumstances of this case, we are of the view that the recommended suspension is unwarranted. It is our judgment that the respondent should receive a public reprimand.
We agree with the sentiment expressed by the referee and by The Florida Bar that the complaining witness should not be allowed to suffer financially from the respondent's ethical violations. However, the only way to order restitution, within the contemplation of the Florida Bar Integration Rule, is as a condition imposed along with suspension. Fla.Bar Integr. Rule, art. XI, Rule 11.10(3). Since we here decide that suspension is unwarranted, the vindication of the complaining witness' grievances against the respondent must be left to ordinary civil proceedings.
We hereby reprimand Clemens Hagglund for violating Florida Bar Integration Rule, *80 article XI, Rule 11.02(3)(a), and Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(5) and 5-104(A). The costs of these proceedings in the amount of $1,158.27 are taxed against the respondent.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD and HATCHETT, JJ., concur.
ALDERMAN, J., dissents with an opinion, with which OVERTON and SUNDBERG, JJ., concur.
ALDERMAN, Justice, dissenting.
I dissent to that portion of the majority opinion which disapproves the referee's recommended disciplinary penalty of suspension from the practice of law for a period of two months and imposes a public reprimand instead. The referee's recommended penalty is warranted under the present circumstances. My concern is not with the matters which occurred ten years ago but rather with respondent's reprehensible misconduct in executing and filing a false affidavit of proof as to the amount due and owing him from Mrs. Robitaille, in support of his motion for default judgment against her. Respondent admits that certain payments had been made toward the loan or investment so that he knew the amount of the final judgment against Mrs. Robitaille was greater than it should have been. Furthermore, he was aware of the continued efforts to levy and execute upon the incorrect judgment, yet he did nothing to inform the court of the judgment's infirmities. Apparently, it was because of respondent's advice to Mrs. Robitaille that the default judgment was entered against her. While advising Mrs. Robitaille on other legal matters, respondent told her not to actively defend any suit filed by him against her or to ignore his claim and to allow the default judgment. At no time did he advise her, as he should have, to obtain independent counsel to represent her in any claim that he would commence against her. The referee correctly terms respondent's conduct toward Mrs. Robitaille as callous and indifferent.
In my view, a two-months suspension is entirely appropriate. Accordingly, I would approve the referee's recommended disciplinary measure that respondent be suspended from the practice of law for a period of two months and thereafter until he offers proof that any judgment that he has recovered in the suit of Hagglund v. Robitaille has been satisfied, discharged, or vacated without cost to Mrs. Robitaille, that she has been reimbursed for any payment that she has made or any portion of that judgment upon which execution has been entered, and that the respondent be required to pay all costs of this proceeding.
OVERTON and SUNDBERG, JJ., concur.