622 So.2d 974 (1993)
THE FLORIDA BAR, Complainant,
v.
Edward B. ROOD, Respondent.
Nos. 78741, 78795.
Supreme Court of Florida.
June 24, 1993.
Rehearing Denied September 2, 1993.
John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee, and Bonnie L. Mahon and Joseph A. Corsmeier, Asst. Staff Counsels, Tampa, for complainant.
Edward B. Rood, pro se.
PER CURIAM.
Both the Florida Bar and Edward B. Rood petition this Court to review the report of the referee recommending that Rood be suspended from the practice of law for a period of two years. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution and approve the referee's recommendation of a two-year suspension.
The Bar filed a three-count complaint against Rood, but voluntarily dismissed count II of the complaint. After an evidentiary hearing, the referee found Rood guilty of count I and found that count III had not been proven with clear and convincing evidence. We will consider each count separately.

*975 Case No. 78,795

The Stephenson Case:
The parents of Heidi Stephenson employed the law firm of Rood, Hapner, and Dekle to represent them after Heidi was involved in a slip and fall accident. David Webster, an attorney with the firm, handled the matter. In May 1984, the case settled for $50,000 and Heidi's share of the settlement proceeds amounted to $20,000. The court ordered that Heidi's money be deposited in a guardianship account and that the funds be withdrawn only by order of the probate division judge.
Webster left the firm sometime between May 1984 and October 1986, but the Stephensons' case remained with the Rood firm. In July 1984, Rood's son disbursed the settlement proceeds to Heidi's parents without insuring that Heidi's money was deposited in the guardianship account. Mr. and Mrs. Stephenson then spent Heidi's money without the permission of the probate judge. Because an annual accounting had not been filed, the probate judge issued an order to show cause in October 1986 directed to the Stephensons and Rood's law firm. There was no response to the show cause order, and the court issued a contempt notice to the Stephensons and Webster. Prior to the contempt hearing, Mrs. Stephenson advised Rood in a letter that all of Heidi's money had been spent, that she had not answered Rood's inquiries because she was afraid, and that she was ready to be punished for spending her daughter's money. Rood attended the hearing on behalf of the Stephensons, and he notified them of the judge's order that they repay Heidi her money by her eighteenth birthday. Rood did nothing further on the case until April 1988, when the court issued another order to show cause because of the failure to file the annual accounting.
Rood claimed that his office then mailed some probate forms to the Stephensons and filed the forms with the court once they were returned to his office. Mrs. Stephenson testified, however, that Rood called her and advised her to come into his office to sign some papers. At his office, Rood presented her with a completed annual return of co-guardians and informed her that she had to sign the document or risk going to jail. Mrs. Stephenson signed the documents and Rood filed them with the court. The referee accepted Mrs. Stephenson's testimony.
Shortly after signing the false annual return of co-guardian, Mrs. Stephenson was hospitalized for treatment of a serious illness. On June 20, 1988, while Mrs. Stephenson was in the hospital, Heidi and her older sister visited Rood's office. Rood informed them that if Heidi failed to sign the acknowledgment of receipt of property, their mother would go to jail. Consequently, Heidi signed the document and Rood filed it. However, because neither an inventory nor a petition for discharge was filed, another order to show cause was issued on June 6, 1989. Rood asked an associate, Dennis Lopez, to handle the matter.
Lopez learned through his conversations with the Stephensons that the documents they signed were false. On August 16, 1989, Lopez spoke with Rood about the Stephensons' allegations and Rood stated that he could not recall the case. The next day Rood went to the probate judge's office and obtained an order of discharge of co-guardians, even though Rood knew that the documents in support of the order were false. Lopez advised Rood that he intended to submit an affidavit to the court outlining the Stephensons' comments about spending Heidi's money and signing false documents. At that point, Rood returned to the probate judge and informed him that a mistake had been made regarding the guardianship papers, and the judge voided the order of discharge of co-guardians.
On September 6, 1989, Rood contacted the Stephensons' new attorney, Douglas Gregory, and advised him that the Stephensons should execute a promissory note to Heidi prior to the next hearing before the probate judge. In closed chambers prior to the hearing, Rood advised the judge that there was no reason to ask the Stephensons about the false documents because a promissory note had been prepared. The *976 judge did not ask any questions about the documents.
Based on these findings, the referee recommended that Rood be found guilty of violating the following Rules Regulating The Florida Bar: Rule 4-1.1 (a lawyer shall provide competent representation); rule 4-1.2(d) (a lawyer shall not counsel a client to engage in conduct that the lawyer knows or reasonably should know is criminal or fraudulent); rule 4-1.3 (a lawyer shall act with reasonable diligence); rule 4-3.3(b) (candor towards the tribunal); rule 4-3.3(d) (in an ex parte proceeding a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse); rule 4-4.1(b) (in the course of representing a client, a lawyer shall not knowingly fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client); and rule 4-8.4(a), (b), (c) and (d) (a lawyer shall not: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; or (d) engage in conduct that is prejudicial to the administration of justice). As a disciplinary measure, the referee recommended that Rood be suspended for one year and thereafter until he shall prove rehabilitation.

Gambling Debts:
In November 1988, Rood executed a worthless check complaint alleging that Michael Ng gave him four worthless checks in return for cash. The Bar alleges that in April 1989, Rood gambled with Ng on backgammon games. Rood advised Ng that if he won enough money, the checks would be returned to him. Ng won a series of bets on backgammon games, and the Bar claims that Rood prepared and initialed I.O.U.s for money he owed Ng for winning the bets. Rood testified that the initials on the I.O.U.s were forged. The Bar alleged that Rood's statements regarding the validity of his signature and initials were false and that by making the false statements Rood engaged in conduct involving dishonesty and deceit. The referee found that the Bar failed to prove by clear and convincing evidence that Rood was guilty of misconduct.

Case No. 78,741

The Lakeland Property Conveyance:[1]
In June 1974, Rood purchased a piece of property in Lakeland, Florida, and directed the sellers of the property to execute a warranty deed in favor of Rood's son, Edward C. Rood. On September 20, 1987, Edward C. Rood conveyed the property to his father without receiving any consideration. On March 28, 1989, Dr. Alverson and Physicians Insurance Company filed a lawsuit in Polk County circuit court,[2] alleging that Edward C. Rood, with the knowledge and assistance of Edward B. Rood, fraudulently conveyed the Lakeland property to avoid paying a judgment against Edward C. Rood.
During the course of the Alverson v. Rood case, Edward B. Rood filed an affidavit that stated as follows:
8. That EDWARD B. ROOD had no knowledge of the entry of the Subject Judgment at the time of the conveyance of the Subject Property from Ed, Jr. to EDWARD B. ROOD. EDWARD B. ROOD first became aware of the judgment sometime later after the conveyance.
The referee noted a major problem in Rood's testimony regarding his knowledge of the judgment against his son. In December 1986, Edward B. Rood served as cocounsel in a criminal trial in which Edward C. Rood was the defendant. Edward B. Rood successfully objected to the State's *977 attempt to introduce a certified copy of the Michigan judgment into evidence. Clearly, he had some knowledge of the judgment. The trial judge in Alverson v. Rood found that both Edward B. Rood and Edward C. Rood engaged in a course of fraudulent conduct with respect to the conveyance of the Lakeland property. After reviewing the trial transcript and the court's findings of fact, the referee also concluded that the findings were proven by clear and convincing evidence.
The referee recommended that Rood be found guilty of violating the following Rules Regulating The Florida Bar: Rule 4-3.3(a)(1) (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal); rule 4-3.3(a)(4) (a lawyer shall not knowingly permit any witness to offer testimony or other evidence that the lawyer knows to be false); rule 4-8.4(b) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects); rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); rule 4-8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice).
In determining the appropriate discipline to recommend for Rood, the referee considered that Rood did not have any prior disciplinary record, that he made substantial contributions to Bar-related activities, and that he financially contributed to various charitable organizations. In aggravation, the referee considered Rood's pattern of misconduct, his substantial experience in the practice of law, his dishonest or selfish motive, and his refusal to acknowledge the wrongful nature of his conduct. Based on these factors and the gravity of Rood's actions, the referee recommended that Rood be suspended for a period of one year and thereafter until he shall prove rehabilitation.
We agree with the referee's findings on all three counts. The record supports the referee's conclusion that Rood knowingly and intentionally encouraged the Stephensons to execute false documents. To exacerbate the wrongfulness of his actions, Rood filed the false documents with the probate court. Although he did not gain or intend to gain any financial profit from handling the Stephensons' case, he perpetrated a fraud on the court by misrepresenting the status of Heidi's guardianship case to the probate judge. Rood's obstruction of justice warrants a one-year suspension from the practice of law.
We also agree with the referee that the Bar has not proven with clear and convincing evidence that Rood made false statements to the court regarding his signature on gambling I.O.U.s. The Bar has the burden of proving that the attorney is guilty of specific rule violations, The Florida Bar v. Weiss, 586 So.2d 1051 (Fla. 1991), and the evidence fails to establish the Bar's allegations that Rood lied about the validity of his signature.
With respect to the conveyance of the Lakeland property, we also accept the findings of the referee and approve the referee's recommendation of guilt. Rood argues that he gave the property to his son as a conditional gift, which was to be returned to him in the event his son could not financially manage the property. Rood explained that by conveying the property, the son was merely fulfilling his obligation under the oral agreement they made in 1974. As pointed out by the Bar, however, the original deed did not contain any reservation of rights and Rood has not presented any evidence to prove that the property was given to his son as a conditional gift. Since 1982 Rood's son had been unable to pay the taxes on the property or the principal due on a mortgage that encumbered the property, but Rood did not demand the property back from his son until after the Michigan judgment was rendered in 1986.
We conclude that there is competent and substantial evidence to support the referee's finding that Rood knew of the judgment against his son at the time of the land transfer. The referee is the person most well-equipped to judge the character and demeanor of the lawyer being disciplined. *978 The Fla. Bar v. Fine, 607 So.2d 416 (Fla. 1992). The referee was clearly convinced that Rood's testimony was not credible, and we are not at liberty to substitute our judgment for that of the finder of fact. Even though the Michigan judgment had not been entered in Florida, Rood was aware that it existed and he colluded with his son in an effort to protect the property from his son's creditors. Beyond the fact that Rood knowingly assisted his son's fraudulent conveyance, we are extremely concerned that Rood signed a sworn affidavit in a civil proceeding stating that he did not know about the judgment until after the conveyance. By attempting to deceive both the trial court and his son's creditors, Rood has tarnished his personal reputation as well as the reputation of the legal profession.
In light of Rood's misconduct in the Lakeland property conveyance, we suspend him for a period of one year from the practice of law. His suspension in case no. 78,741 shall run consecutively to his one-year suspension for his misconduct in handling the Stephensons' guardianship case (case no. 78,795). Thus, Rood will be suspended for two years. The suspension will be effective thirty days from the filing of this opinion so that Rood can close out his practice and protect the interests of existing clients. If Rood notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Rood shall accept no new business from the date this opinion is filed. Judgment for costs in the amount of $5,858.52 is hereby entered against E.B. Rood for which sum let execution issue.
It is so ordered.
BARKETT, C.J., and SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
McDONALD, J., dissenting with an opinion.
OVERTON, J., recused.
McDONALD, Judge, dissenting.
I realize that the referee, as the finder of fact, is perched in a position that affords him a vantage point that we, as an appellate court, are not afforded. The referee had the responsibility of judging the demeanor of several witnesses, including the respondent, and the concomitant responsibilities of weighing the testimony and deriving factual conclusions. Upon my review of the record, however, I do not agree with the majority that the referee's findings were supported by clear and convincing evidence.
In the Stephenson case, I am troubled by the referee's finding that Rood had a dishonest or selfish motive, which was classified as an aggravating factor in the referee's report. Not only did Rood perform legal services for the Stephensons pro bono, the record is void of any scintilla of evidence indicating that he could have gained financially or otherwise from the Stephensons' transactions. Mrs. Stephenson contacted Rood because she needed someone to represent her before the probate judge after she admitted that she was guilty of spending Heidi's money. The record does not suggest any reason that Rood might have had to induce or encourage the Stephensons to sign false documents. Rather, the record reveals that the Stephensons may have been motivated to falsify the documents in an effort to protect themselves from the punishment that could have been imposed for spending Heidi's money.[3] I am concerned that, by finding Rood guilty of several ethical violations, the majority has too hastily shifted the Stephensons wrongdoing to the attorney representing them.
Clearly, an attorney's knowledgeable use of false information in the judicial process *979 constitutes a serious breach of professional ethics. Dodd v. The Fla. Bar, 118 So.2d 17 (Fla. 1960). I am not convinced, though, that Rood filed the documents with knowledge that they contained false information. Rood claimed that his office mailed the necessary probate forms to the Stephensons and that he had no reason to doubt the validity of the statements contained in the forms. In contrast, Mrs. Stephenson claimed that Rood called her and advised her to come into his office to sign some papers. When she went to his office, she was presented with a completed annual return of co-guardians. Mrs. Stephenson claims that when she reminded Rood that the information on the form was false, he informed her that she had to sign the document or risk going to jail.
The referee unequivocally rejected Rood's testimony regarding the chronology of events leading up to Mrs. Stephenson's decision to sign the annual return. However, the referee's reasons for accepting Mrs. Stephenson's testimony do not logically compute. The referee points out Heidi's testimony that Rood told her she needed to sign the acknowledgment of receipt of property in order to keep her mother from going to jail. Even if we accept Heidi's testimony as fact, I do not believe her testimony necessarily precludes acceptance of Rood's testimony that he believed Mrs. Stephenson provided truthful information when she signed the probate forms. Because Heidi and Mrs. Stephenson signed the documents at separate times and under separate circumstances, the referee's explanation does not justify discounting Rood's testimony in its entirety.
In reference to the transfer of the Lakeland property, I also disagree with the majority that there is clear and convincing evidence to show that Rood violated any ethical rules. Specifically, the evidence in the record does not prove that the transfer was made for the purpose of defrauding a creditor. I am of the opinion that everyone has a right to protect by lawful means their investment in property. The fact that E.C. Rood's creditor may ultimately have a right to a lien on the property does not change E.B. Rood's right to protect his investment.
Rood originally purchased the property, but had the title placed in his son's name. He testified that the gift was conditional, not absolute, and the evidence does not appear to contradict his testimony.[4] Thus, at the least, Rood had an equitable lien for the purchase price. Johnson v. Craig, 158 Fla. 254, 28 So.2d 696 (1947) (an equitable lien may be established out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in a particular case). The property was also encumbered with a mortgage and it became evident that the son could not fulfill all of his financial obligations. When the property was reconveyed to Rood, the encumbrances attached and Rood assumed them. In this matter, Rood was not playing the role of a lawyer, but the role of a father picking up the pieces of the financial disaster that beseiged his son. He had a legal right to pick up those pieces by protecting his property and accepting the reconveyance.
For these reasons, I respectfully dissent.
NOTES
[1] The facts involved in the Lakeland property conveyance are fully described in The Florida Bar v. Rood, 620 So.2d 1252 (Fla. 1993).
[2] Alverson v. Rood, No. 89-900 (Fla. 10th Cir. Ct., Aug. 27, 1990).
[3] The Stephensons signed false documents on two different occasions. According to Mrs. Stephenson, the first false documents were signed under Rood's direction. Then on July 10, 1989, Mr. Rood's associate, Dennis Lopez, sent a letter to the Stephensons and several forms containing information he obtained from his firm's file on the matter. The Stephensons also signed these forms even though they knew the information on the forms was false.
[4] Although the deed did not contain any reservation of rights, Rood testified that he made an oral agreement with his son that the property would be returned if his son could not financially manage the property.