PER CURIAM.
We have for review the complaint of The Florida Bar and the referee’s report regarding alleged ethical breaches by Robert J. Catalano. We have jurisdiction. Art. V, § 15, Fla. Const. We approve the referee’s findings of fact and recommended discipline and hereby disbar respondent.
The Florida Bar filed its complaint against Catalano as well as a request for admissions on August 15, 1995. Catalano filed an answer to the complaint and responses to the allegations on September 26, 1995. At the time designated for the final hearing on January 3, 1996, respondent failed to appear or to contact the referee. The referee determined that a copy of the notice of hearing was mailed by certified mail to respondent at his record bar address and that respondent had used this same address as late as September 26, 1995, in filing his responsive pleadings with the clerk of the Florida Supreme Court. In addition, the returned postal documentation established that the notice of hearing was unclaimed on three at *1300 tempts and not undeliverable because of a wrong address. In light of these circumstances, the referee found that respondent was sufficiently served notice of the final hearing under Rule Regulating the Florida Bar 3-7.11(b) and therefore the referee had jurisdiction to proceed in respondent’s absence.
At the hearing, the referee found that respondent had been suspended from the practice of law in Massachusetts for a period of three years on June 5, 1995, and, as a result of the Massachusetts proceedings, respondent was referred to the Florida Bar for reciprocal discipline.[1]
In Count I of the Massachusetts Bar complaint, the record reflects that, while representing the defendants in a civil suit in Massachusetts in 1991, respondent violated the terms of a temporary restraining order (TRO) and subsequent preliminary injunction, both of which prohibited his clients from transferring or disposing of any of their property. Directly contrary to the trial court’s order, Catalano advised his clients to write checks to him totaling over $44,000 for deposit into his escrow account and then withdrew the majority of the transferred funds as “payment” for his legal fees and for his own benefit. Catalano further failed to disclose his activities to the court. When the trial judge became aware that Catalano had violated the TRO, he advised the plaintiffs in the suit to file a civil contempt complaint against Catalano and ordered respondent to file an affidavit with the court indicating the “total monies, from whatever source, that were transferred to [him] while the temporary restraining order was in effect.” Respondent then misrepresented in the affidavit the amount that had been transferred to him in violation of the TRO. Respondent subsequently made further misrepresentations to the court in the civil contempt hearing, at which the court found that respondent had violated the TRO.
Several months later the plaintiff in the suit filed an amended complaint for civil contempt against Catalano. The court found that respondent also had violated the terms of the permanent injunction for similar improper transfers of funds.
The record reflects that in Count II of the Massachusetts Bar complaint, Catalano failed to keep his client’s funds intact and commingled his own funds with client funds while representing a plaintiff in a personal injury lawsuit in 1990 and 1991. In the course of this representation, Catalano received personal injury protection (PIP) payments from an insurance company to cover medical expenses incurred by his client. Catalano endorsed these checks and deposited them into his client funds account, but failed to inform his client that these funds had been received. Moreover, Catalano neglected to pay his client’s medical providers with these funds. Instead, Catalano issued checks from his account that drew upon his client’s PIP funds. The client ultimately filed a request with the Massachusetts Bar for investigation into Ca-talano’s conduct, complaining that Catalano had failed to make any PIP payments to her medical providers. Upon receiving notification of the complaint, Catalano paid his client’s medical providers, but had to commingle $1,300 of his personal funds into his client funds account to make the payments.
As to count III in the Massachusetts Bar action against respondent, the record reflects that an associate in Catalano’s office represented Comfed Savings Bank (Comfed) as a settlement agent in a closing on a parcel of property located in Taunton, Massachusetts. Pursuant to the representation, Catalano received from Comfed $94,723.87 as purchase money for the property and deposited these funds in his client funds account. Respondent was to withhold $5,000 from the sellers to satisfy an attachment that had been levied on the property arising from a suit brought against the sellers in the Taunton District. Court. As a result of Catalano’s negligence, the purchase money was not kept intact in respondent’s client funds account. Instead, *1301 over the next four years respondent drew upon the purchase money he was holding for the sellers in order to pay certain expenses related to the transaction, but also for unrelated expenses. On several occasions during this time, the balance in Catalano’s client funds account was insufficient to meet his obligations to the sellers.
On October 1,1990, the suit over the property was settled for $3,000, but the balance in Catalano’s client funds account was only $817.39. Later that month, the attorney for the plaintiffs in the property suit requested that respondent forward the settlement proceeds to him on behalf of the plaintiffs. Respondent failed to forward the funds at that time and eventually sent a letter to the plaintiffs’ attorney on June 26, 1991, stating that he was-no longer holding any of the sellers’ funds in his client funds account. At the time of respondent’s Florida Bar hearing in January, 1996, the settlement had yet to be resolved.
In light of these facts, the referee concluded that Catalano violated the following Rules Regulating the Florida Bar: rules 4-1.2(a) (a lawyer shall abide by a client’s decisions concerning the objectives of representation and whether to make or accept an offer of settlement); 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); 4-1.16(a) (a lawyer shall hold in trust, separate from the lawyer’s own property, funds and property of clients that are in the lawyer’s possession pursuant to the representation, and in no event may the lawyer commingle the client’s funds with personal funds); 4-3.3(a)(l) (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal); 4-3.3(a)(4) (if a lawyer has offered material evidence and thereafter comes to know of its falsity, the lawyer shall take reasonable remedial measures); 4-4.1(a) (in the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person and (b) (in the course of representing a client, a lawyer shall not knowingly fail to disclose a material fact or law to a third person when disclosure is necessary to avoid assisting a fraudulent act by a client); and, finally, 4-8.4(b) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer in other respects), (c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and (d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).
The referee recommended that Catalano be disbarred and pay the costs of the proceedings. In recommending disbarment, the referee considered in aggravation that Cata-lano had a prior disciplinary history (public reprimand with three years probation in 1995); was dishonest and had a selfish motive; had engaged in a pattern of misconduct and was guilty of multiple offenses; and had substantial experience in the practice of law (admitted to the Bar on October 31, 1979).[2] Although Catalano filed a petition for review summarily contesting the referee’s findings and recommendations, he has failed to file a brief or otherwise submit argument on his behalf.
We have examined the record in this case and find substantial, competent evidence to support the referee’s recommendations as to Catalano’s guilt. We also approve the recommended disbarment, noting that disbarment is appropriate where, as here, there is a pattern of misconduct and history of discipline. See Florida Bar v. Maynard, 672 So.2d 530 (Fla.1996) (holding that disbarment is appropriate where attorney made false statement to a tribunal and engaged in *1302 conduct involving fraud, dishonesty and misrepresentation); Florida Bar v. Knowles, 572 So.2d 1373 (Fla.1991) (attorney’s neglect and dishonesty constituted cumulative misconduct which warranted disbarment); Florida Bar v. Shanzer, 572 So.2d 1382, 1383 (Fla.1991) (disbarment presumed to be appropriate punishment where lawyer has misused client funds); Florida Bar v. Mims, 532 So.2d 671 (Fla.1988) (holding that misappropriation of client funds, commingling, and past disciplinary history warranted disbarment). Additionally, we find the referee’s assessment of costs in the amount of $835.50 to be reasonable and assess these costs against respondent.
Robert J. Catalano is hereby disbarred. The disbarment will be effective thirty days from the filing of this opinion so that Catala-no can close out his practice and protect the interests of existing clients; If Catalano notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Respondent shall accept no new business from the date this opinion is filed. The costs of these proceedings are taxed against Catalano and judgment is entered in the amount of $835.50, for which sum let execution issue.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.

. Under rule 3-4.6, Rules Regulating the Florida Bar, the suspension of respondent from the Massachusetts bar is considered conclusive proof of the underlying misconduct in the Florida proceedings.

. Although not directly presented by respondent, the referee also considered letters from two of respondent’s former mental health care providers filed on respondent's behalf in conjunction with the Massachusetts disciplinary proceeding. These letters briefly described respondent’s problems with alcohol and depression and how these problems may have contributed to respondent's poor work performance and a lack of attentiveness in other areas of his life around the time of the alleged instances of misconduct. The referee concluded that the substance of these letters did not mitigate respondent's misstatements under oath to a tribunal, violation of direct court orders, or his commingling and misuse of client funds for his personal use.