725 So.2d 360 (1998)
THE FLORIDA BAR, Complainant,
v.
Frank G. CIBULA, Jr., Respondent.
No. 89,551.
Supreme Court of Florida.
November 25, 1998.
Rehearing Denied February 9, 1999.
*361 John F. Harkness, Jr., Executive Director, Tallahassee, Florida, and Ronna Friedman Young, Bar Counsel, Fort Lauderdale, for Complainant.
Robert A. Springer of Springer & Springer, Palm Springs, for Respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Frank G. Cibula, Jr. We have jurisdiction. See art. V, § 15, Fla. Const.
At issue in this case is respondent Cibula's testimony under oath during two court hearings held in connection with his alimony obligations. In August 1991, at a hearing on a motion for contempt for failure to pay alimony, Cibula testified under oath that he earned $3000 per month. Again, at a second hearing concerning his alimony obligation held in November of 1991, Cibula testified under oath that he earned $3000 per month, or $36,000 per year. On May 31, 1996, Judge Stephen A. Rapp entered a Final Order of Modification that stated:
The Former Husband misrepresented his income in 1991 in order to induce the Former Wife to agree to modify the alimony. The true facts would have justified the modification in 1991. The Court finds that the Former Wife never really believed the Former Husband in any event. The Former Husband's misrepresentations have resulted in additional time and expense *362 in attorney's fees for which he should be held responsible.
On December 17, 1996, The Florida Bar filed a complaint against Cibula charging that his testimony was knowingly false and that in so testifying Cibula had violated rule 3-4.3 (conduct that is unlawful or contrary to honesty and justice), rule 4-3.3(a)(1) (false statement of material fact to a tribunal), and rule 4-8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation), of the Rules Regulating The Florida Bar.
After a hearing, the referee found that Cibula's income for 1991 was greatly in excess of $36,000, and that Cibula knew his testimony was false at the time he gave it. Accordingly, the referee found Cibula guilty of the charged misconduct and recommended that he be suspended from the practice of law for sixty days with automatic reinstatement at the end of the period of suspension. The referee also recommended that costs be assessed against Cibula.
The Florida Bar filed a petition for review seeking imposition of a harsher disciplinea ninety-one-day suspension and withdrawal of Cibula's civil trial lawyer certification. Cibula filed a cross-petition challenging the referee's finding that the misrepresentations were made intentionally, the propriety of the sixty-day suspension, and the award of costs.

FINDINGS OF FACT
Cibula argues that the Bar did not prove by clear and convincing evidence that his misrepresentations to the court regarding his income were intentional. Cibula's burden on review, however, is to demonstrate "that there is no evidence in the record to support [the referee's] findings or that the record evidence clearly contradicts the conclusions." Florida Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998) (quoting Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996)). Where the referee's findings are supported by competent substantial evidence, "this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee." Jordan, 705 So.2d at 1390 (quoting Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992)).
Here, the referee's finding that Cibula's misrepresentations to the court regarding his income were intentional is clearly supported by competent substantial evidence in the record. Cibula argues that nothing in the record proves that he knew, at the time of his testimony, what his total annual income would be. However, even by his own account of the draws he took from his law practice in 1991, by the time he first testified at the August hearing, Cibula had already paid himself $35,200, and by the time he testified in November that his annual income was about $36,000, he had already drawn a total of $44,200. Though he may not have known at the time of his testimony what his total income would be, this evidence clearly supports a finding that he knew it would be in excess of $36,000 for the year. In addition to this evidence, the referee's finding is bolstered by four other categories of evidence specifically listed in his report: (1) Cibula's apparent overpayment of taxes by $100,000 as reflected in his 1991 tax return; (2) the testimony of the Bar's expert accountant regarding Cibula's actual taxable income as shown on his 1991 tax return, the accountant's opinion that overpayment of taxes is a method of hiding income from an ex-spouse, and documentation showing that Cibula's income level for other years was never less than six figures; (3) the testimony of James Rich, counsel for Cibula's ex-wife, regarding Cibula's reluctance to divulge his tax information during the modification proceedings and the fact that Cibula had consistently represented to him that his income was $3000 a month; and (4) the contempt orders and confinement previously imposed upon Cibula for his failure to pay alimony, which showed a pattern of attempting to evade this responsibility. Accordingly, the referee's finding that Cibula intentionally misrepresented his income in his testimony to the court is approved.

DISCIPLINE
Both the Bar and Cibula disagree with the referee's recommendation that Cibula be suspended for sixty daysthe Bar because it is too lenient, and Cibula because it is too harsh. While the Bar agrees that suspension is appropriate, it argues that a *363 ninety-one-day suspension requiring proof of rehabilitation before reinstatement is required because of several important factors: (1) Cibula lied under oath two times; (2) his previous conduct established a pattern of attempting to evade his alimony responsibilities; and (3) the apparent motive behind his representations was personal and financial gain. The Bar also argues that Cibula's certification in the area of civil trial law should be withdrawn. The Bar maintains that Cibula should not be allowed to hold himself out as possessing special skills and expertise in the area of civil litigation, while having attempted to pervert the litigation process by lying to the court and having been previously disciplined for being held in contempt on multiple occasions.
Cibula argues that a sixty-day suspension is unfair and a public reprimand is more appropriate under the circumstances because: (1) his misrepresentations were negligent rather than intentional; (2) a suspension will harm not only him but all those financially dependent upon him; and (3) his prior disciplinary record consists only of a public reprimand which would not even warrant discipline under present case law.
Although a referee's recommendation as to discipline is persuasive, this Court has the ultimate responsibility to impose an appropriate sanction. See, e.g., Florida Bar v. Solomon, 711 So.2d 1141, 1146 (Fla.1998); Florida Bar v. Reed, 644 So.2d 1355, 1357 (Fla.1994). The disciplining of unethical conduct must fulfill three purposes:
First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
Reed, 644 So.2d at 1357 (quoting Florida Bar v. Lord, 433 So.2d 983 (Fla.1983)).
We first dispose of Cibula's arguments that the recommended discipline is too harsh and that a public reprimand is all that is warranted under the circumstances. As previously stated, there is substantial competent evidence to support the referee's finding that the misrepresentations were intentional. As to his argument that a suspension would harm others who depend on him financially, we reject this consideration as a factor in assessing the propriety of the discipline because this argument could be made in almost any case where suspension or disbarment is imposed.
Finally, although Cibula argues that under Florida Bar v. Taylor, 648 So.2d 709 (Fla. 1995), the prior contempt orders entered against him for failure to pay alimony would no longer be grounds for discipline, we find that his situation is distinguishable from that presented in Taylor. In that case, the Court held that an attorney was not subject to disciplinary action where he was held in civil contempt of court for failure to pay child support, but no finding of fraudulent or dishonest conduct was made. See Taylor, 648 So.2d at 711. Moreover, even if we were to disregard Cibula's prior disciplinary history stemming from the contempt orders, we would still find suspension to be an appropriate sanction in this case considering the seriousness of Cibula's intentional misrepresentations made while under oath. Thus, we reject Cibula's contention that a public reprimand is all that is warranted.
We agree with the referee that suspension is an appropriate sanction, but further agree with the Bar that a suspension of ninety-one days is clearly warranted based on the misconduct in this case. Standard 6.1 of the Florida Standards for Imposing Lawyer Sanctions sets forth general guidelines for determining an appropriate sanction in cases "involving dishonesty, deceit, or misrepresentation to a court." In the absence of aggravating or mitigating circumstances, the following guidelines apply:
6.11 Disbarment is appropriate when a lawyer: (a) with the intent to deceive the court, knowingly makes a false statement or submits a false document; or (b) improperly withholds material information, *364 and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.
6.12 Suspension is appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action.
6.13 Public Reprimand is appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld.
6.14 Admonishment is appropriate when a lawyer is negligent in determining whether submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceeding.
Fla. Stds. Imposing Law. Sancs. 6.1.
This Court considers a lawyer who intentionally lies under oath to have committed an extremely serious offense. Our condemnation of this type of misconduct is not of recent vintage. In Dodd v. Florida Bar, 118 So.2d 17, 19 (Fla.1960), this Court stated:
No breach of professional ethics, or of the law, is more harmful to the administration of justice or more hurtful to the public appraisal of the legal profession than the knowledgeable use by an attorney of false testimony in the judicial process.
We have warned that such conduct warrants severe discipline and have dealt harshly with those who commit this offense. See Florida Bar v. Rightmyer, 616 So.2d 953, 955 (Fla. 1993) (disbarring attorney and stating that "[a]n officer of the court who knowingly and deliberately seeks to corrupt the legal process can logically expect to be excluded from that process").
In Florida Bar v. O'Malley, 534 So.2d 1159 (Fla.1988), we rejected the referee's recommendation in favor of an enhanced discipline where an attorney gave false testimony in a suit for the return of bond collateral entrusted to him. In so doing, we stated:
The referee in his report failed to place due emphasis on the fact that O'Malley deliberately and unequivocally lied under oath. His answers at deposition were directly contrary to the truth; he later admitted this. A lawyer may commit no greater professional wrong. Our system of justice depends for its existence on the truthfulness of its officers. When a lawyer testifies falsely under oath, he defeats the very purpose of legal inquiry.
Id. at 1162. We imposed a three-year suspension, noting that were it not for the referee's finding of significant mitigating circumstances, the punishment would have been disbarment. See id. at 1162-63.
In determining the appropriate discipline in this case, we have reviewed cases, like the present one, involving misrepresentations by an attorney to a court in a personal matter as opposed to misrepresentations made to others or misrepresentations made in the context of representing a client. The discipline imposed in those cases ranges from disbarment[1] to suspension of more than ninety days[2] to public reprimand.[3] Like the *365 present case, most of the cases where suspensions of more than ninety days were imposed involved only one or two instances of misconduct, and some even involved significant mitigating circumstances. See, e.g., Florida Bar v. Vining, 707 So.2d 670, 671 n. 2 (Fla.1998); Florida Bar v. Norvell, 685 So.2d 1296, 1299 (Fla.1996). Thus, cases involving a public reprimand are the exception rather than the rule. See Florida Bar v. Hagglund, 372 So.2d 76, 78 (Fla.1979) (referee did not conclude that attorney knowingly filed false affidavit); Florida Bar v. King, 174 So.2d 398 (Fla.1965) (involving unusual mitigating circumstances). Here, the referee found no mitigating factors.
While we recognize that dissolution of marriage proceedings present an emotional time for both parties, when lawyers are litigants they do not cast aside the oath they take as an attorney or their professional responsibilities. Lawyers have an ethical responsibility as officers of the court to rise above the tactics that all too often permeate a dissolution proceeding. Not only does the law demand truthfulness under oath, but the obligations of our profession demand it. As former Justice Ehrlich has stated, "our profession can operate properly only if its individual members conform to the highest standard of integrity in all dealings within the legal system." Florida Bar v. Colclough, 561 So.2d 1147, 1150 (Fla.1990) (Ehrlich, C.J., concurring in part, dissenting in part).
In considering the penalty, we have taken into account the referee's recommendation of sixty days and the fact that The Florida Bar requested no more than a ninety-one-day suspension. Additionally, we have taken into account the fact that all of Cibula's transgressions occurred in the course of his dissolution proceedings, with the misrepresentations occurring in 1991. We have also considered the penalty imposed in other similar cases. Accordingly, we impose a suspension of ninety-one days.
Frank G. Cibula, Jr. is hereby suspended from the practice of law for ninety-one days. The suspension will be effective thirty days from the filing of this opinion so that Cibula can close out his practice and protect the interests of existing clients. If Cibula notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Cibula shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment for costs is hereby entered against Cibula in the amount of $9,546.42, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] Florida Bar v. Budnitz, 690 So.2d 1239 (Fla. 1997)(false statements in New Hampshire disciplinary matter); Florida Bar v. Maynard, 672 So.2d 530 (Fla. 1996) (false testimony before bankruptcy court regarding loan and ownership of vehicle); Florida Bar v. Kaufman, 684 So.2d 806 (Fla. 1996) (false testimony to avoid discovery of assets after judgment rendered against attorney); Florida Bar v. Catalano, 685 So.2d 1299 (Fla. 1996)(false statements in affidavit ordered by court regarding funds transferred to attorney in violation of temporary restraining order); Florida Bar v. Rightmyer, 616 So.2d 953 (Fla. 1993) (false testimony in civil mortgage foreclosure suit); Florida Bar v. Rood, 620 So.2d 1252 (Fla. 1993) (false testimony in suit against attorney alleging fraudulent conveyance); Florida Bar v. Jones, 571 So.2d 426 (Fla.1990)(false statement to this Court in response to order to show cause why attorney should not be held in contempt).
[2] Florida Bar v. Vining, 707 So.2d 670 (Fla. 1998) (misrepresentations in stipulation submitted to court while seeking funds in court registry); Florida Bar v. Norvell, 685 So.2d 1296 (Fla. 1996)(false statements in affidavit submitted to bankruptcy court in application for employment as counsel); Florida Bar v. Segal, 663 So.2d 618 (Fla. 1995)(false statement in petition for discharge submitted to probate court); Florida Bar v. Kleinfeld, 648 So.2d 698 (Fla.1994)(false statements in affidavit seeking disqualification of judge in contempt hearing against attorney); Florida Bar v. Rood, 622 So.2d 974 (Fla. 1993)(false affidavit to court in suit alleging attorney's son fraudulently conveyed property to him); Florida Bar v. O'Malley, 534 So.2d 1159 (Fla. 1988)(false testimony in suit against attorney for return of bond collateral entrusted to him).
[3] Florida Bar v. Hagglund, 372 So.2d 76 (Fla. 1979)(false affidavit in suit against former client); Florida Bar In re Brooks, 336 So.2d 359 (Fla. 1976)(false swearing in coroner's inquest); Florida Bar v. King, 174 So.2d 398 (Fla.1965)(false grand jury testimony regarding incident of bribery during attorney's campaign for state senate).