179 So.2d 193 (1965)
THE FLORIDA BAR, Complainant,
v.
Donald E. WILKES, Respondent.
No. 33505.
Supreme Court of Florida.
October 13, 1965.
*195 Donald C. Jacobson, Daytona Beach, for The Florida Bar, complainant.
Donald E. Wilkes, respondent, in pro. per.
O'CONNELL, Justice.
The respondent, Donald E. Wilkes, seeks review of a recommendation by the Board of Governors of The Florida Bar that he be disbarred. Respondent has been a member of the Bar of Florida since his admission in 1950. Until 1960, when he was disbarred in a disciplinary proceeding in New York, he was also a member of the bar of that state. While his conduct was being investigated by a grievance committee but prior to his disbarment in New York respondent returned to this state where he now lives. He has not practiced law since his return to Florida.
In 1963 The Florida Bar filed a complaint against respondent charging him with violating Rule 11.02(6) of the Integration Rule, 31 F.S.A. After hearing, the referee recommended that respondent either be disbarred or suspended until the New York disbarment be vacated. The Board of Governors adopted the findings of the referee and ordered that respondent be disbarred.
The principal question for decision is the effect that Rule 11.02(6), supra, requires us to give to the judgment of disbarment entered in New York. That rule reads as follows:
"(6) Discipline by foreign jurisdiction. A final adjudication by a court or other authorized agency of another state in a disciplinary proceeding that an attorney licensed to practice in that state is guilty of misconduct justifying disciplinary action shall be considered as conclusive proof of such misconduct in a disciplinary proceeding in this state."
This case is unique in that the violations of professional ethics in issue occurred in another state, and in that they have already resulted in a judgment of disbarment by a competent court in that state. It marks the first time that this court has been called upon to construe and apply Rule 11.02(6). For this reason we requested the parties to file additional briefs dealing specifically with this question and both complied.
Most state courts encountering the question have taken the view that the effect to be given a judgment of disbarment by a sister state is governed either by the full faith and credit clause of Art. IV, Section 1, of the federal constitution, or by the principles of interstate comity. In re Van Bever, 1940, 55 Ariz. 368, 101 P.2d 790; In re Leverson, 1935, 195 Minn. 42, 261 N.W. 480; Copren v. State Bar, 1947, 64 Nev. 364, 183 P.2d 833, 173 A.L.R. 284; In re Brown, 1932, 60 S.D. 628, 245 N.W. 824; State Board of Law Examiners v. Brown, 1938, 53 Wyo. 42, 77 P.2d 626; In re Clay, Ky.App. 1953, 261 S.W.2d 301; In re Veach, 1956, 365 Mo. 776, 287 S.W.2d 753. Moreover, this also appears to be the position urged by the referee and the board of governors. In any event, it seems appropriate that we take a position as to the extent of our obligation under these principles before going on to consider the effect of Rule 11.02(6), Integration Rules. For if we conclude that either of these principles imposes an obligation upon Florida to give effect to the disbarment judgment of the New York court, the rule would no longer matter very much, except to the *196 extent that its obligation might exceed that imposed by these principles.
We have concluded that neither comity nor the full faith and credit provision requires that the judgment of disbarment in New York result in disbarment in this state.
For at least two reasons it would be incongruous to apply the principle of the full faith and credit provision to judgments of disbarment. First, the issues adjudicated are not the kind to which the clause was intended to apply. As Chief Justice Stone has expressed it, "[i]t was the purpose of that provision to preserve rights acquired or confirmed under the public acts and judicial proceedings of one state by requiring recognition of their validity in others." Pink v. A.A.A. Highway Express, 1941, 314 U.S. 201, 210, 62 S.Ct. 241, 246, 86 L.Ed. 152. Moreover, the implementing act of Congress, 62 Stat. 947 (1948), 28 U.S.C.A. § 1738, requires only that
"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory of Possession from which they are taken."
Here the New York judgment did not purport to disbar the respondent from practicing in Florida or any state other than New York, and that judgment vested no right which respondent's practice in Florida would violate.
Second, to our knowledge neither of the principles under discussion has ever been held to require one state automatically to admit to practice an individual merely because a sister state has admitted him. (Those states which do admit to practice on a showing of admission in certain other states do so on the basis of reciprocity, and not on any obligation of comity or full faith and credit.) Thus, if these principles do not control or affect admission to practice there is no logical basis upon which they can be made applicable to disbarment or removal from practice. This is so because the authority and responsibility of the state is the same in admission to practice as it is in disbarment. It is to protect the public against those who for any reason are unfit to practice law. Both functions are given to this court under our state constitution and we must exercise both or abdicate our constitutional mandate under Art. V, Sec. 23, Florida Constitution, F.S.A.
Here we note that to hold that Florida is not obligated to recognize and enforce the New York judgment of disbarment does not mean that it cannot do so if it elects. This brings us to an interpretation of Rule 11.02(6) and the determination of what effect this court intended to give foreign judgments of disbarment or other discipline when it adopted the rule.
In considering the question of the effect to be given disciplinary judgments of a sister state, this court could have adopted the extreme position under which no recognition would be given such a judgment. The rationale for rejecting this position is well explained in Selling v. Radford, 1916, 243 U.S. 46, 49, 37 S.Ct. 377, 61 L.Ed. 585. Alternatively, the court could have adopted the opposite extreme under which such a judgment would be given automatic and complete effect by imposing the same discipline in Florida as imposed in a sister state.
In our view adoption of either of these extremes would amount to an abdication of this court's responsibility imposed by the Florida constitution. On the one hand, to ignore acts of professional misconduct merely because they occurred outside this state would be to ignore our duty to protect the people of this state from one who has been held by another state to be an unfit practitioner. On the other hand, to accept the second extreme would constitute an abdication of the responsibility imposed *197 on this court to determine for itself, in proceedings conducted by it, or under its direction, the fitness of those permitted to practice in this state. To give automatic and unquestioning effect to the judgment of a foreign tribunal would be to fail to exercise the discretion vested in this court by our state constitution.
By adopting Rule 11.02(6) we took a reasonable position between the two extremes above mentioned. By the plainest language the rule makes such a foreign judgment of guilt conclusive proof of such misconduct in a disciplinary proceeding in this state. Proof of guilt of the acts of misconduct adjudicated in the sister state is accomplished by simply proving the entry of the foreign judgment. This eliminates any necessity to retry the bare issue of guilt and makes unnecessary the production in Florida of testimony and evidence on this issue. The rule nether prescribes nor proscribes professional behavior. It relates solely to the question of proof of guilt.
Although the respondent has not raised the question we note that the complaint against him in this case, after setting forth the details of the New York proceedings, alleges a "violation" of Rule 11.02(6). As noted above the rule does not either prescribe or proscribe conduct of attorneys; therefore, the misconduct in New York could not constitute a violation of this rule. In the instant case it seems clear that the respondent suffered no prejudice because the complaint charged a violation of Rule 11.02(6), for it also specified the acts of misconduct committed in New York. However, for guidance of the Bar in future cases we point out that the complaint, in a case such as this one, cannot be based upon a violation of Rule 11.02(6), but as in all other cases must charge acts of misconduct as violations of the canons of ethics and rules governing attorneys.
It is clear  and both parties agree  that the rule does not require Florida to follow the foreign judgment as to the discipline imposed thereby. The imposition of discipline in such proceedings requires much more than a determination of guilt. The basic issue always is whether the misconduct of the accused manifests such an unfitness to practice as to require the imposition of discipline to protect the public interest. Gould v. State, 1930, 99 Fla. 662, 127 So. 309, 69 A.L.R. 699; Rule 11.02, Integration Rule, F.S.A. In order properly to resolve this issue, this court and its agencies must, in every disciplinary proceeding, whether based upon acts of misconduct already adjudicated in another state or upon acts committed in this state, fully inform themselves concerning the nature of the misconduct and all the attendant circumstances. In doing this all available sources which can be properly utilized should be considered, including all evidence properly offered in the Florida proceeding and the record of proceedings in the sister state. Under this view Florida, although accepting the foreign determination of guilt, is left free to determine for itself the fitness of the accused attorney as affected by the acts of misconduct involved. It may accordingly order discipline which is more or less stringent than that awarded by the sister state.
We therefore conclude that under Rule 11.02(6), the introduction in evidence of a properly authenticated judgment of discipline entered by a competent agency of a sister state shall operate as conclusive proof of guilt of the acts of misconduct adjudicated in that judgment, but that the discipline to be awarded for such acts by this state shall be determined by this court and its agencies in the same manner as in all other disciplinary proceedings.
This interpretation of Rule 11.02(6) will fully protect the public interest of this state by making it feasible to conduct disciplinary proceedings here based on out of state derelictions; it will assure that the accused attorney will receive due process of law and a mature consideration of his fitness to *198 practice in this state at the time the proceedings are had in this state; and it will preserve the integrity of this court's exclusive jurisdiction and obligation in disciplinary matters.
Under this procedure, it is necessary for this court and its agencies to consider the record of the proceedings conducted in the sister state. This inquiry into that record may serve either or both of two principal objectives. First, if the accused attorney shall in the Florida proceedings properly raise the issues, we may be required to determine whether the proceedings in the sister state were so deficient as to make the foreign judgment unreliable as an automatic adjudication of guilt. To this extent we would apply the reasoning of the United States Supreme Court in Selling v. Radford, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585. In that case the U.S. Supreme Court held that in a proceeding for disbarment before it based upon disbarment in one of the states, it would recognize the state disbarment as warranting disbarment by it unless from an intrinsic consideration of the record of the state proceedings it found: (1) that from want of notice or opportunity to be heard, due process was lacking; (2) that there was such an infirmity of proof that the court could not accept the judgment as final; or (3) some other grave reason not to accept the natural consequences of the judgment. In the fairly recent case of Theard v. United States, 1957, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342, that court indicated what would constitute "some other grave reason."
The effect given a judgment of discipline of a sister state by Florida is different than that given it by the United States Supreme Court. The latter court apparently accepts it as binding on it and requiring disbarment unless one of the three conditions above mentioned is found to exist. Under Rule 11.02(6) we accept the foreign judgment only as proof of guilt. Nevertheless, right and justice require that when the accused attorney shows that the proceeding in the foreign state was so deficient or lacking in notice or opportunity to be heard, that there was such a paucity of proof, or that there was some other grave reason which would make it unjust to accept the foreign judgment as conclusive proof of guilt of the misconduct involved Florida can elect not to be bound thereby. We should note here that the burden of showing why a foreign judgment should not operate as conclusive proof of guilt in a Florida disciplinary proceeding is on the accused attorney.
This going behind the judgment of the sister state does not constitute a collateral attack on that judgment, for it cannot affect its result in the sister state. It is only a determination of the effect which we will give that judgment in this state.
The second reason for considering the record of the proceedings is simply to enable this court and its agency, The Florida Bar, to make an informed judgment as to the fitness to practice of the accused attorney, as it may be demonstrated by his actions of misconduct in the sister state. This is the same basic question necessary to be resolved in every disciplinary proceeding. Use of the record made in the foreign proceeding merely makes it unnecessary to bring witnesses and proof from that state to this one.
Finally, we reach the critical question of whether Rule 11.02(6) was applied in these proceedings so as to give it the effect we have attributed to it in this opinion. Various statements in the report of the referee and the briefs of the Bar indicate that it was not so applied. This is understandable since, as noted above, this is the first occasion on which the rule has been applied.
The full record of the New York proceedings was introduced in evidence. We cannot now say that the referee and the Board of Governors did not consider it, and the referee's report contains the assertion that he did so. Nevertheless, the *199 following paragraph in the referee's report seems to indicate that he tried this case on an erroneous interpretation of Rule 11.02 (6) and that he gave to the New York judgment greater effect than the rule intends. This paragraph reads:
"Therefore, I find that the Respondent's avoidance plea in his Answer was not sustained because his evidence in support thereof was not sufficient in weight, competency and credibility to reasonably establish any extenuating circumstances in excuse or mitigation of the disbarment penalty imposed by the New York court, and thus there is nothing of an excusing or mitigating nature to be considered by this court in applying its own disciplinary measures against the Respondent." (Emphasis added)
Thus, it seems clear that the referee proceeded on the theory that the New York judgment was binding on Florida, not only as to proof of guilt, but also as to the discipline awarded, unless the respondent attorney established extenuating circumstances. Under our view of the rule, the referee, the Board of Governors, and we in turn must determine what discipline should be awarded for the misconduct in New York on an independent appraisal of the acts of misconduct.
In another part of his report the referee describes the kind of examination of the New York record that respondent claimed was his right and then rejects the claimed right, saying:
"At this trial, the Respondent contended that the New York findings and Order show the charges to be so morally trivial, and the disbarment penalty so relatively severe that they are devoid of due process under the Schware case * * *; and, therefore, he was entitled to go back of the New York Court findings and Order, and have this Court examine the New York Referee's Report (exhibits A and G), as well as the New York Grievance Committee Minutes (Exhibit 3, which was never before the New York Court, per its Referee's report), so that this Court may determine, from the entire record of all the New York proceedings, the question of whether the Disbarment Order was based upon charges and evidence sufficient to establish that he was morally unfit. In short, he sought, under the authority of the Schware case, to impeach in this collateral proceeding the New York Court findings and Order which otherwise are not impeachable here, because they are regular and show on their face full compliance with all due process jurisdictional prerequisites."
The referee accurately stated respondent's position. He was in error in rejecting it. In a case brought on a foreign judgment of discipline it is difficult to understand how the referee, the Board of Governors, or this court could arrive at an informed conclusion as to the respondent's fitness to practice law and, consequently, the discipline to be awarded, without considering the record which explains and details the misconduct and the circumstances surrounding it.
The referee's fear that the respondent was seeking to impeach, collaterally, the New York judgment is unfounded. No rights or obligations arising under the New York judgment can be affected in any way by what Florida does in these proceedings; that judgment only affects the respondent's right to practice in New York. These proceedings can neither give effect to nor constitute a collateral attack on that judgment.
There are other statements of like import in the referee's report, but it is unnecessary to repeat them all. However, one other statement does deserve mention. After stating that the respondent had failed to show anything in extenuation of the New York disbarment, the referee observed that one consequence of permitting respondent to *200 practice in Florida after disbarment in New York would be to "create a precedent to open up Florida as a Mecca and haven for all disbarred attorneys from everywhere."
This concern expressed by the referee is understandable. To allow one who has been disbarred in a sister state to practice here might well reflect on The Florida Bar. But it does not follow that our election not to be bound automatically by the discipline awarded by a sister state will result in Florida becoming a Mecca for disbarred attorneys. The rule applies only to cases in which the accused is a member of The Florida Bar and also of the bar of another state. One who is not a member of The Florida Bar who has been disbarred in another state would have to prove his fitness to be admitted here as does any other candidate for admission. Moreover, it is not reasonably to be expected that this court and its agency, The Florida Bar, would ignore their duty to protect the public and the legal profession if the misconduct adjudicated in the sister state warranted disbarment, or other discipline, in Florida.
The judgment of the Board of Governors indicates that it, too, was concerned over the knotty problem of allowing one who had been disbarred elsewhere to practice here. Thus, the Board stated that it considered it "inappropriate to recommend a lesser disciplinary sanction than has been imposed by our sister state. * * *"
From the foregoing statements and others contained in the report of the referee and the judgment of the Board, the inference is clear that both the referee and the Board based their determination of the discipline to be awarded the respondent on the discipline awarded in the New York judgment, rather than on an independent appraisal of respondent's fitness to practice in Florida, as demonstrated by the evidence produced in this proceeding.
In his report, the referee considered various aspects of respondent's legal, intellectual and social makeup, noted the absence of any testimony by respondent as to church, civic and social affiliations, and discussed at some length respondent's belief in existentialism.
The lack of evidence as to respondent's church, social or civic activities does not seem to have been used by the referee as a basis for his determination that respondent was not a fit person to practice law. However, its mention requires us to say that while evidence of such activities may be offered by an accused to demonstrate moral fitness, lack of evidence thereof may not be considered as negating fitness to practice or moral character. Such activities are not requisite either to admission or continuation of the practice of law.
In his report the referee discussed respondent's belief in and practice of the existentialist philosophy, saying:
"That his belief in the existentialist philosophy of radical individualism motivated him in doing the acts for which he was disbarred, is clearly shown by his testimony on the extenuating question in which he pictured himself as a solitary, isolated attorney beating the gong of revolt against the legal profession's established order and mores, and staking his professional life on his own private decision to follow that course, regardless of the consequences, so as to be capable of a destiny worthwhile, or else he would be merely like any other attorney and thus required to accept the full and unconditional moral responsibility for doing the acts complained of. Of course such a philosophy is wholly repugnant to the reputable practice of The Law, and the Respondent, being a firm believer and active follower of that philosophy, is not in my view a fit person to practice law."
*201 Although the referee based his recommendation of disbarment or suspension primarily on the misconduct adjudicated in New York and upon respondent's failure to show circumstances in mitigation or extenuation thereof, it is inescapable that he also relied upon respondent's belief and practice of existentialism as a further ground for holding the respondent to be unfit to practice and therefore subject to disbarment.
It is unnecessary for us to deal at length or in depth with the subject of political, philosophical, religious or other beliefs as a proper subject of inquiry, or as proof relating to moral fitness, in disciplinary proceedings. In this instance the record simply does not support the conclusions drawn by the referee in the last quoted portion of his report. Nor did the complaint in this cause charge respondent with practice of existentialism as a ground for disciplinary action.
The respondent's explanation of the philosophy of existentialism was brief, covering only about one typewritten page in the record. In addition a "flyer" or announcement, written by respondent regarding a forthcoming lecture by him on existentialism at the Symposiac Club, was introduced in evidence over respondent's objection.
Neither respondent's testimony, the "flyer" or any other portion of the record supports the referee's conclusion that the existentialist philosophy is repugnant to the reputable practice of law, or that respondent's belief in or practice thereof renders him unfit to practice law. Mere belief in an unorthodox philosophy does not in itself make one unfit to practice law. As the Supreme Court of the United States observed in Schware v. Board of Bar Examiners, 353 U.S. 232, at page 244, 77 S.Ct. 752, at page 759, 1 L.Ed.2d 796:
"Mere unorthodoxy [in the field of political and social ideas] does not as a matter of fair and logical inference, negative `good moral character.'"
In summary, in this opinion we hold that Rule 11.02(6) relates only to proof of guilt of misconduct adjudicated in a foreign jurisdiction; that, except in the unusual circumstances discussed herein, proof of the foreign judgment constitutes proof of the guilt of the acts of misconduct adjudicated thereby; that the discipline awarded in the foreign judgment is not binding on Florida; and, therefore, that we must in each such proceeding determine the fitness of the accused attorney to practice in Florida and the appropriate discipline to be awarded here. We have not and do not in this opinion reach the question of whether the judgment of disbarment made by the Board of Governors should be approved or not.
For the reasons above expressed the cause is remanded with directions that it be returned to the referee for reconsideration in light of this opinion and for submission of a new report in which the referee shall recommend the discipline which should be awarded respondent for the misconduct of which he was found guilty in New York as charged against him in the complaint filed in this proceeding.
It is so ordered.
THORNAL, C.J., and THOMAS, ROBERTS, DREW and ERVIN, JJ., concur.
CALDWELL, J., dissents.