[682 NYS2d 70]

In the Matter of B. MARC MOGIL, a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, December 16, 1998

**APPEARANCES OF COUNSEL**

*Gary L. Casella,* White Plains (*Matthew Renert* of counsel), for petitioner.

*Ernest J. Peace,* Mineola, for respondent.

### OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was served with a petition containing six charges of professional misconduct.

After a hearing, the Special Referee sustained all six charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline as the Court deems just and proper. The respondent moves to confirm the Special Referee's report and to consider the evidence proffered in mitigation.

Charge One alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

On or about January 14, 1994, the respondent anonymously sent or caused to be sent to Thomas Liotti a letter signed by the "Wyatt Earp Association" which, *inter alia*, referred to Liotti as a "Donkey-turd" who thinks of himself as a "defensive superstar", criticized Liotti for a recent speech he had made, called him a "motormouth", alleged certain personal and unprofessional activities by Liotti in Denver, called him a "traffic court jerk" and a "Laughing-Stock", referred to his "idiotic and laughable brickbat letters sent behind our backs", asked whether Liotti's family or Newsday or "disciplinary commissions" would like to learn about his "Bimbos and Feds and threats" in Denver, and warned that "People in glass houses should be *very* careful".

On or about January 29, 1994, the respondent anonymously sent or caused to be sent to Liotti a two-page facsimile, the first page of which was written in German and referred to him as a "Motormund". The second page purported to be a "Certificate of Upgrade to Complete Asshole", signed by "Wyatt Earp".

On or about March 3, 1994, the respondent anonymously sent or caused to be sent to Liotti a one-page facsimile from "A Long Islander", which, *inter alia*, referred to Liotti's "mug" in the newspaper "with your baby killer and translator", asked whether the Newsday photographer knew when to show up because of a "leak" to the press; and asked whether "trying your case in the press and getting yourself publicity" isn't "unethical".

In or about mid-March 1994, the respondent anonymously sent or caused to be sent to Liotti an envelope containing a

phone number of the Central Intelligence Agency, a leprechaun decal, and various pills in several sizes. The respondent also sent Liotti a one-page letter with business card bearing his name and the labels "Superstar" and "Have Mouth, Will Travel". The letter informed Liotti that the mock business card would be in the hands of every lawyer in Nassau County and that it was printed in Virginia.

In or about late March 1994, the respondent anonymously sent or caused to be sent to Liotti a letter which referred to a Newsday photograph of Liotti with clients and which stated, "Do you see how easy it is to disappear from the face of the earth?".

On or about May 2, 1994, the respondent anonymously sent or caused to be sent to Liotti a one-page facsimile which referred to him as a "putz" and included decal representations of the American flag and the Tazmanian Devil cartoon character.

On or about June 16, 1994, the respondent sent to Liotti a signed "RSVP" for the annual golf outing of the Criminal Courts Bar Association (hereinafter the Bar Association) which included handwritten comments such as "I wouldn't miss *this* night for the world!" and representations identical to those noted in the May 2, 1994 correspondence. At a Bar Association-sponsored dinner on June 23, 1994, the respondent distributed a four-page statement entitled "13 Suggestions for 'Confrontational' or Intentionally Offensive Criminal Defense Attorneys", which included references to "19th Century Tombstone, Arizona", medications, and attorneys who consider themselves "superstars", and which threatened attorneys for "grossly contrived complaints" against the judiciary.

On or about June 24, 1994, the respondent sent Liotti a two-page facsimile which, *inter alia*, contained an advertisement for the movie "Wyatt Earp", a signed handwritten message stating that "Earp was a real character who never let up until someone coming after him was *finished*" and a printed message on top of the advertisement saying "Don't Say I Didn't Warn You".

On or about August 18, 1994, the respondent anonymously sent or caused to be sent to Liotti a one-page facsimile from the "Wyatt Earp Association" which, *inter alia*, claimed credit for distributing the mock business card at the June 23, 1994 Bar Association dinner, stated that the card was "printed at our Langley" headquarters, and asserted that Liotti was still a "vociferous letter writer and attacker of the innocent".

In or about September 1994, the respondent anonymously sent or caused to be sent a one-page facsimile which purports to be "The Liotti Gazette" and, *inter alia*, contains mock articles about Liotti being investigated for child abuse and being under inquiry by the Internal Revenue Service in connection with his trip to Denver.

In September 1994, the respondent anonymously sent or caused to be sent to Liotti a street map of Garden City marking the spot where the Liotti office is located and a street map of Westbury circling the spot where the Liotti home is located.

Charge Two alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

The four-page statement entitled "13 Suggestions for 'Confrontational' or Intentionally Offensive Criminal Defense Attorneys", which the respondent distributed at the Bar Association dinner on June 23, 1994, included assertions warning attorneys of the potential consequences of filing complaints against or otherwise offending Judges. The statement noted that the "target" will find out "despite your desire to remain anonymous" and that "swords have two blades, and every action has an equal and opposite reaction".

The respondent's statement further added that making an unfounded complaint against a Judge would provoke retaliation by the Judge's colleagues who would be "galvanize[d] * * * against you" and that "Risking professional problems will be the least of your difficulties". The respondent described "Mogil's Law": If your "first figurative blow" does not "put the person 'down for the count' * * * you've had it!".

The respondent's statement further noted that an "offended official" could "find out more about you than your mother knows", and threatened to raise questions against lawyers who offend public officials:

(1) "Is there anything in your background that you would prefer your colleagues or loved ones not know?";

(2) "How are your tax returns for the last several years?";

(3) "Are you taking any medications you would prefer remain a private matter?"; and

(4) "Would you like to see every item charged for the last 10 years on your credit cards scrutinized by the Feds?"

The respondent's statement threatened complaining lawyers with exposure in The New York Times for extramarital

liaisons, "alcoholic over-indulgences", and other behavior. The statement also warned that complaining lawyers may "unwittingly trigger the wheels of a deadly serious defensive scenario".

Charge Three alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

In or about September 1994, the respondent maintained an account with America On-Line, through which he sent and received messages electronically. The screen name which the respondent used for his e-mail messages was "Judgemojo". The password is not visible on the computer screen and was disclosed only to the respondent's secretary.

On or about September 16, 1994, the respondent sent an e-mail message to President Clinton which contained comments regarding the President's policy on Haiti and which identified the sender as Judge B. Marc Mogil of Great Neck. The White House sent the respondent an acknowledgment letter dated October 3, 1994. Within approximately one week, the respondent gave the White House letter to the Nassau County Police, claiming that he had never communicated with the President on any subject. The respondent claimed that someone had communicated in his name. He mentioned Liotti to the police as a possible suspect.

In a letter dated November 8, 1994, to staff counsel of the Commission on Judicial Conduct (hereinafter the Commission), the respondent falsely stated that he had not communicated with the White House and that someone had fraudulently done so in his name.

Charge Four alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation by giving false testimony under oath, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

On January 24, 1995, the respondent testified under oath pursuant to the Commission's investigation. The respondent falsely testified that he never communicated with the White House on any subject, that he did not send the President an e-mail message, that he did not know how the White House had his own name and home address, that he did not know why the President sent him a letter, and that some other person communicated to the President in his name.

Charge Five alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation by giving false testimony under oath, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

The June 24, 1994 facsimile sent to Liotti, referred to in Charge One, was addressed to the respondent's former secretary, Bonnie Nohs, who was then working in Federal District Court in Brooklyn.

On January 24, 1995, the respondent testified under oath pursuant to the Commission's investigation. The respondent falsely testified that:

(1) at the Bar Association-sponsored dinner on June 23, 1994, Ms. Nohs had asked him for a movie recommendation and said that her husband liked Westerns, to which the respondent replied by mentioning the movies "Wyatt Earp" and "Tombstone";

(2) he told Ms. Nohs that he would fax her information the next day about the particular movie that he was recommending;

(3) he sent the two-page facsimile to Liotti's office because he expected Liotti to forward the document to Ms. Nohs;

(4) he did not add the words "Don't Say I Didn't Warn You" above the movie advertisement;

(5) he wrote the words, "I've heard Earp was a real character who never let up until someone coming after him was *finished*", not as a message to Liotti, but to Bonnie Nohs;

(6) he had his secretary look up Liotti's facsimile number and send the facsimile to Liotti's office because he and his secretary were so busy with a homicide trial that day that they did not have the time to look up Ms. Nohs' fax number; and

(7) the advertisement and the message were not intended for Liotti and he did not intend for Liotti even to see or know about the facsimile.

Charge Six alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation by giving false testimony under oath, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

On January 24, 1995, the respondent testified under oath pursuant to the Commission's investigation. During his testimony, the respondent falsely testified that:

(1) Liotti was the only person other than the respondent's doctor and his family who knew that the respondent was taking the drug Prozac.

(2) In June or July 1993, the respondent had caught Liotti in chambers, alone, standing next to the full flight suit which the respondent keeps hanging in chambers;

(3) Liotti had unzipped the top of the flight suit to uncover a medical alert tag which the respondent kept tucked inside the flight suit; and

(4) Liotti had read the tag, which indicated that the respondent used Prozac.

Based on the evidence adduced, the Special Referee properly sustained all six charges. The Grievance Committee's and the respondent's motions to confirm the Special Referee's report are granted.

In determining an appropriate measure of discipline to impose, the respondent asks the Court to consider that the acts which were found to warrant his removal from the office of County Court Judge were, based on the undisputed evidence, the product of substantial deliberate provocation. The respondent was found to have acted inappropriately as a Judge toward only one lawyer, who he portrays as "a known judge baiter, distrusted by prosecutors and defense attorneys alike, and dis-respected by Court personnel". In further mitigation, the respondent submits that his acts were inappropriate and ill advised but not venal and involved no misuse of his public office. They conferred no financial or other benefit upon the respondent and inflicted no harm to anyone other than the respondent. In view of the public humiliation he has suffered, the financial expense of the various proceedings, his otherwise unblemished record, the high degree of respect accorded him by members of the judiciary, the Bar, and court employees, the length of his suspension from the practice of law, and the fact that he presents no danger to the public, the respondent requests that he be permitted to immediately return to the practice of law.

The Grievance Committee submits that the respondent's characterization of his conduct as amounting to "little more than minor pranks" underscores his continued failure to appreciate the serious and disturbing nature of his actions which the Court of Appeals has described as "offensive, harassing and vindictive" (*Matter of Mogil*, 88 NY2d 749, 754). The Commission found, and the Court of Appeals confirmed, that the re-

spondent repeatedly gave false testimony while under oath during the course of the Commission's investigation (*Matter of Mogil, supra*).

Under the totality of the circumstances, the respondent is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law.

MANGANO, P. J., BRACKEN, ROSENBLATT, O'BRIEN and RITTER, JJ., concur.

Ordered that the petitioner's and the respondent's motions to confirm the Special Referee's report are granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, B. Marc Mogil, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, B. Marc Mogil is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.