763 So.2d 303 (2000)
THE FLORIDA BAR, Complainant,
v.
Marc Bernard MOGIL, Respondent.
No. SC94861.
Supreme Court of Florida.
July 13, 2000.
*305 John F. Harkness, Jr., Executive Director, John Anthony Boggs, Staff Counsel, and Donald M. Spangler, Bar Counsel, The Florida Bar, Tallahassee, Florida, for Complainant.
John A. Weiss of Weiss & Etkin, Tallahassee, Florida; and Patricia S. Etkin of Weiss & Etkin, Plantation, Florida, for Respondent.
PER CURIAM.
We have for review a referee's report recommending that attorney Marc Bernard Mogil be disbarred for violating certain Rules Regulating The Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee's report and disbar Mogil.

FACTS
Mogil is a member of The Florida Bar and was both an attorney and judge in New York. He was removed from judicial office in New York in 1996 for sending to a certain criminal defense attorney multiple anonymous communications that were harassing, threatening, and otherwise offensive; for distributing at a bar function a statement on judicial stationery containing numerous disparaging and offensive comments regarding criminal defense attorneys (including many indirect references to the criminal defense attorney to whom he had sent the anonymous communications) as well as warnings that attorneys who make unfounded complaints against judges may face judicial retaliation; and for repeatedly displaying a lack of candor and making both misleading and patently false statements in connection with the judicial investigation of his misconduct. See In re Mogil, 88 N.Y.2d 749, 650 N.Y.S.2d 611, 673 N.E.2d 896 (1996).
On the same facts underlying his judicial removal, Mogil was thereafter disbarred in New York in 1998 for engaging in conduct adversely reflecting on his fitness to practice law and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. See In re Mogil, 250 A.D.2d 343, 682 N.Y.S.2d 70 (1998).
Based on the New York disbarment, The Florida Bar in 1999 filed a complaint against Mogil alleging that he had violated Rules Regulating The Florida Bar 4-8.4(c) and (d) (respectively prohibiting lawyers from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation" and "conduct in connection with the practice of law that is prejudicial to the administration of justice"), asserting that the New York disbarment order should be considered conclusive proof of Mogil's misconduct under Rule Regulating The Florida Bar 3-4.6, which provides in full:
A final adjudication in a disciplinary proceeding by a court or other authorized disciplinary agency of another jurisdiction, state or federal, that an attorney licensed to practice in that jurisdiction is guilty of misconduct justifying disciplinary action shall be considered as conclusive proof of such misconduct in a disciplinary proceeding under this rule.
In his answer, response to the Bar's request for admissions, and a letter to the referee, Mogil contested the operation of rule 3-4.6 and urged that Florida did not have reciprocity with New York. He attached to his letter to the referee copies of several documents filed in the New York proceedings (i.e., a substantive brief, a memorandum of law, proposed findings and conclusions, etc.), but did not attach or otherwise submit any transcripts from the New York proceedings.
The Bar thereafter filed a motion for partial summary judgment as to Mogil's guilt of the rule violations charged, urging under rule 3-4.6 that there existed no issues of fact or law. Mogil filed a response again contesting the operation of rule 3-4.6 and urging the referee to come to his own *306 conclusions of fact based on the pleadings and documents Mogil had filed.
At the summary judgment hearing (which Mogil attended), the referee orally granted the Bar's motion for partial summary judgment as to Mogil's guilt, whereupon Mogil explicitly consented to the partial summary judgment. The referee accordingly issued an order granting the Bar's motion for summary judgment as to guilt, held a separate hearing as to discipline (which Mogil chose not to attend), and issued his report.
In his report, the referee found that "[b]y operation of Rule 3-4.6, ... the aforesaid final adjudication [of disbarment in New York] shall be considered conclusive proof of misconduct in this disciplinary proceeding." As to guilt, in accordance with the partial summary judgment order, the referee recommended that Mogil be found guilty as charged. As to discipline, the referee recommended that Mogil be disbarred with leave to reapply in five years and ordered to pay the Bar's costs. In aggravation, the referee found that Mogil had submitted false evidence or false statements or had engaged in other deceptive practices during the disciplinary process; had refused to acknowledge the wrongful nature of his conduct; and had substantial experience in the practice of law. In mitigation, the referee found that Mogil had an absence of any prior disciplinary record and that he had a physical or mental disability or impairment.
Mogil filed a petition for review in this Court and, shortly thereafter, filed an uncontested motion to supplement the record with the transcripts of his New York judicial removal proceedings. This Court granted the motion and Mogil accordingly filed those transcripts with this Court.

ANALYSIS
Mogil challenges both the guilt and the discipline recommended by the referee.

A. Guilt
Mogil raises four arguments as to guilt relating to (1) the partial summary judgment; (2) New York's different standard of proof; (3) rule 4-8.4(c); and (4) rule 4-8.4(d).

1. The Partial Summary Judgment

Mogil first argues that the referee's partial summary judgment as to guilt based on rule 3-4.6 was improper because it denied him an opportunity to show that the New York disbarment proceedings (which were based on the New York judicial removal proceedings) were deficient. We disagree.
Rule 3-4.6 provides in pertinent part that a foreign jurisdiction's final adjudication of misconduct "shall be considered as conclusive proof of such misconduct in a disciplinary proceeding under this rule." This Court has held in this context that "if the accused attorney shall in the Florida proceedings properly raise the issues, we may be required to determine whether the proceedings in the sister state were so deficient as to make the foreign judgment unreliable as an automatic adjudication of guilt." Florida Bar v. Wilkes, 179 So.2d 193, 198 (Fla.1965) (emphasis added). More recently, this Court has made clear that
[c]onsistent with the plain language of [rule 3-4.6], and our holding in Wilkes, we will initially accept a foreign jurisdiction's adjudication of guilt as conclusive proof of guilt of the misconduct charged. The burden then rests with the accused attorney to demonstrate why the foreign judgment is not valid or why Florida should not accept it and impose sanctions based thereon.
Florida Bar v. Friedman, 646 So.2d 188, 190 (Fla.1994) (emphasis added). Though Mogil had ample opportunity to do so, he neither raised this issue nor met his burden in this regard in the proceedings before the referee in the present case.
Specifically, in his filings with the referee, Mogil harshly criticized the ultimate *307 discipline imposed in New York (calling his disbarment under the facts at issue "Kafkaesque," "exceedingly draconian," and "an heinous and serious over-punishment") and correctly urged that this Court need not impose the same discipline as New York. See Wilkes, 179 So.2d at 197 ("It is clear ... that the rule does not require Florida to follow the foreign judgment as to the discipline imposed thereby."). Significantly, however, Mogil did not directly urge that the New York proceedings themselves were deficient or invalid for want of due process, infirmity of proof, or some other grave reason. See id. at 198. At most, Mogil may have indirectly urged this point by complaining in his letter to the referee that the presiding judge in his New York judicial removal case was "an 85-year-old, long retired Judge, who had great difficulty in hearing testimony (double hearing aides [sic]), and who was selected and highly paid unilaterally by the politically appointed Commission on Judicial Conduct" and whose findings of fact were merely "`rubber stamped' ... along the path towards disbarment."
Significantly, however, in the summary judgment context at issue here, "once [the movant] tenders competent evidence to support his motion [in the present case, once the Bar tendered the New York disbarment order as conclusive proof of Mogil's misconduct under rule 3-4.6], the opposing party must come forward with counterevidence sufficient to reveal a genuine issue. It is not enough for the opposing party merely to assert that an issue does exist." Landers v. Milton, 370 So.2d 368, 370 (Fla.1979) (emphasis added); accord Fisel v. Wynns, 667 So.2d 761, 764 (Fla.1996) (quoting Landers in holding that "it is never enough `for the opposing party merely to assert that an issue does exist'"). Rather, it is "incumbent upon [the opposing party] to come forward with competent evidence revealing a genuine issue of fact," Landers, 370 So.2d at 370, and "[t]o fulfill his burden [the opposing party] must offer sufficient admissible evidence to support his claim of the nonexistence of a genuine issue." Harvey Building, Inc. v. Haley, 175 So.2d 780, 783 (Fla.1965); accord Cassady v. Moore, 737 So.2d 1174, 1178 (Fla. 1st DCA 1999) (quoting Harvey in holding that the opposing party must "come forward with counter-evidence sufficient to reveal a genuine issue").
As the party opposing partial summary judgment in the present case, Mogil failed to meet his burden. His unsworn assertions in his letter to the referee suggesting a hard-of-hearing, politically controlled judge are just thatassertions, not supported by affidavit or otherwise. See Almand Construction Co. v. Evans, 547 So.2d 626, 628 (Fla.1989) (upholding summary judgment where opposing party failed to demonstrate by affidavit or otherwise the existence of a genuine issue of material fact; holding that counsel's mere assertion was insufficient); Codomo v. Carroll, 438 So.2d 158, 159 (Fla. 2d DCA 1983) (affirming summary judgment establishing a foreign judgment as a Florida judgment, holding that "[a] mere assertion of fraud in obtaining a foreign judgment, without any substantiation whatsoever, will not operate to prevent establishment of the foreign judgment as a Florida judgment"). Moreover, the copies of documents filed in the New York proceedings (i.e., a substantive brief, a memorandum of law, proposed findings and conclusions, etc.) that Mogil attached to his letter to the referee likewise do not amount to the competent counter-evidence required here; rather, they amount merely to more assertions and legal arguments. See Woodruff v. Government Employees Ins. Co., 669 So.2d 1114, 1115 (Fla. 1st DCA 1996)("[T]he party opposing a motion for summary judgment must present evidence, not simply legal argument, demonstrating the existence of a disputed issue of material fact.").
Even generously assuming otherwise (i.e., assuming that Mogil's letter and attachments thereto marginally amounted to *308 the competent counter-evidence required here), the fact remains that Mogil did not at all pursue this route at the summary judgment hearing. To the contrary, it is clear from the hearing transcript that Mogil essentially conceded the issue of guilt based on rule 3-4.6, but was concerned under the rule that he would not have an opportunity to argue his version of the facts in mitigation of discipline.
Specifically, Mogil stated at the summary judgment hearing that he had "no arguments with [Bar counsel] on the regulation [i.e., rule 3-4.6], nor the interpretation that a final adjudication should in fact be given full effect and credit by the state," indicating that his point of contention related to "the overall nature of whatever discipline this Court seeks to impose." When Bar counsel urged that "at this stage of the proceeding, [Mogil] is not entitled to a trial de novo of the issues that went into the New York disciplinary matter," that the referee was "bound by that determination in New York ... [and] cannot go behind the reasoning, as far as their decision is concerned with respect to the issue of guilt in this proceeding," and that "we're here only on the question of guilt," Mogil replied, "I don't disagree, nor do I wish to create any work for this Court beyond which it has. I don't seek a new hearing on the facts at all." Mogil elaborated that "[a]ll I wanted to be able to submit for His Honor's review and not say this is res judicata, we can't listen to this, is that you have a 50-year-old attorney who has had an unblemished record for 25 years, both here and in [Washington] D.C. and in New York" and that "I just wanted His Honor, under [rule 3-4.6], to be able to consider this in due course, whether you call it mitigation or [otherwise]." Finally, at the end of the summary judgment hearing, after the referee had orally granted the Bar's motion for summary judgment as to guilt, Mogil explicitly stated that "we can take for the record that this partial summary judgment is on consent because I believe that regulation [i.e., rule 3-4.6] is correct, and I have no problems with it."
Thus, the record plainly refutes Mogil's present claim that he was denied an opportunity to show that his New York proceedings were deficient. Clearly, he had such an opportunity and could have pursued this route by submitting any competent counter-evidence he may have had and making arguments thereon at the summary judgment hearing. In this same vein, Mogil could have filed with the referee the transcripts of his New York judicial removal proceedings. He failed to take any such action. Thus, much like the attorney at issue in Friedman, Mogil in the present case "was given ample opportunity before and during his disciplinary proceeding to demonstrate any inadequacies in the New York forum. For instance, he could have made the New York transcript available to the reviewing referee, but failed to do so." 646 So.2d at 190.
In short, Mogil has simply waited too long by making these filings and arguments for the first time on review in this Court. See, e.g., Tunnell v. Hicks, 574 So.2d 264, 266 (Fla. 1st DCA 1991) (affirming summary judgment, recognizing that "[a]lthough [the losing party] apparently had sufficient evidence to thwart the motion for summary judgment, he did not file it in a manner that would permit the trial court to consider it pursuant to the provisions of ... rule [1.510]"); Latour Auto Sales, Inc. v. Stromberg-Carlson Leasing Corp., 335 So.2d 600, 601 (Fla. 3d DCA 1976) (affirming summary judgment in relevant part where the losing party "failed to present affidavits or any other evidence in the trial court raising the matters they now assert, in opposition to summary judgment"). Mogil did not meet his burden under Wilkes and Friedman and, under all the circumstances at issue here, the referee did not err in granting the Bar's motion for partial summary judgment as to guilt based on his finding under rule 3-4.6 that the New York disbarment order was conclusive proof of Mogil's misconduct.

*309 2. New York's Different Standard of Proof

Mogil next argues that the clear and convincing evidence standard that applies in Florida disciplinary proceedings was not met (and the referee's report therefore should be rejected) because the referee's factual findings are based entirely on the New York proceedings, which apply the lower evidentiary standard of preponderance of the evidence. As urged by the Bar, we have already rejected this argument in a strikingly similar case.
Specifically, in Friedman, as in the present case, the referee under rule 3-4.6 ultimately recommended discipline in Florida based on disciplinary action taken in New York. See 646 So.2d at 189-90. However, in Friedman, "[d]espite his ultimate recommendation, the referee expressed concern as to whether Florida should accept a foreign jurisdiction's adjudication of guilt when that finding is premised on a preponderance of the evidence standard since the standard in Florida is clear and convincing evidence." Id. at 190. This Court dismissed this concern, holding:
Lawyer discipline standards are designed to guide the disciplinary body to impose sanctions consistent with
clear and convincing evidence that a member of the legal profession has violated a provision of the Rules ... (or applicable standard under the laws of the jurisdiction where the proceeding is brought).
Fla. Stds. Imposing Law. Sancs. 1.3. By the use of the words "or applicable standard under the laws of the jurisdiction where the proceeding is brought," this standard recognizes that foreign jurisdictions may employ standards different than those employed in our disciplinary proceedings. The plain language of rule 3-4.6 provides that when an attorney is found guilty in a foreign jurisdiction of misconduct, it "shall be considered as conclusive proof of such misconduct in a disciplinary proceeding under this rule."
Friedman, 646 So.2d at 190. This Court in Friedman also "reject[ed] [the subject attorney's] claim that his discipline should be minor because of the alleged discrepancies in proof of the New York order." Id. Thus, under Friedman, a foreign jurisdiction's different standard of proof in this context is inconsequential as to both guilt and discipline. We accordingly reject Mogil's argument to the contrary.

3. Rule 4-8.4(c)

The referee recommended finding Mogil guilty of violating rule 4-8.4(c), which provides that "[a] lawyer shall not... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Discussing this rule, this Court has held that "`[i]n order to find that an attorney acted with dishonesty, misrepresentation, deceit, or fraud, the Bar must show the necessary element of intent,'" and that "in order to satisfy the element of intent it must only be shown that the conduct was deliberate or knowing." Florida Bar v. Fredericks, 731 So.2d 1249, 1252 (Fla.1999) (quoting Florida Bar v. Lanford, 691 So.2d 480, 481 (Fla.1997)).[1] Mogil urges that the *310 Bar failed to make such a showing, and that this Court therefore should reject the referee's recommendation as to guilt in this regard. We again disagree.
The New York disbarment order specifically found that Mogil "falsely stated" or "falsely testified" as to several matters during his judicial investigation. In re Mogil, 682 N.Y.S.2d at 72-73. Moreover, the New York judicial removal order (upon which the New York disbarment order is based) elaborated at length:
[T]he record establishes that [Mogil] repeatedly displayed a lack of candor and made both misleading and patently false statements in connection with the Commission's investigation of his misconduct. To give only one example, two of the misconduct charges are based on statements [Mogil] made in connection with an e-mail message allegedly sent by him to the White House in which he criticized the President's policy toward Haiti. Upon receipt of an acknowledgement letter from the White House, [Mogil] contacted a member of the Nassau County Police Department claiming that, as he had never communicated with the President on any subject, someone must be communicating with the President in his name and insinuating that the [criminal defense] attorney with whom he was feuding might have been the individual who had done so. [Mogil] then repeated this general allegation, without naming the attorney, in a letter to the Commission's staff counsel, and, when testifying before the Commission, repeatedly denied that he had sent the e-mail in question. However, the evidence before the Referee cogently establishes that [Mogil's] allegations and steadfast denials were false: there was evidence that the message was received at a time when [Mogil's] personal on-line account was in use, that the account was only accessible by a secret password, that [Mogil] had shared this password with only one person (his secretary) who had never used it or revealed it to others, and that under such circumstances there was little likelihood that anyone other than [Mogil] had sent the message.
Moreover, as to another false testimony charge, regarding his enclosing in one of the anonymous mailings several pills for which he had prescriptions, [Mogil's] prevarications were demonstrated by documentary proof.
In re Mogil, 650 N.Y.S.2d 611, 673 N.E.2d at 898-99. We find that these facts, as established in the New York proceedings, support a finding that Mogil's conduct in this regard was deliberate or knowing, thereby satisfying the intent element under rule 4-8.4(c). See Fredericks, 731 So.2d at 1252 (approving referee's recommendation that the subject attorney be found guilty of violating rule 4-8.4(c) for "misrepresent[ing] the status of the client's matter" where, even though referee had made no specific finding of intent, record supported finding that the subject attorney knowingly and deliberately made the alleged misrepresentations). Furthermore, and as discussed above, the fact that the New York findings were based on a preponderance of the evidence (as opposed to clear and convincing evidence) is inconsequential under Friedman. We accordingly approve the referee's recommendation that Mogil be found guilty of violating rule 4-8.4(c).

4. Rule 4-8.4(d)

The referee also recommended finding Mogil guilty of violating rule 4-8.4(d), which provides in pertinent part that "[a] lawyer shall riot ... engage in conduct in connection with the practice of law that is prejudicial to the administration of justice." Mogil urges that he cannot be found guilty of violating this rule because his misconduct arose from his actions as a judge, not as a lawyer, and did not involve the practice of law. We reject this argument.
*311 "Clearly, the Bar has the authority to bring attorney disciplinary proceedings against a former judge for misconduct that occurred while the judge was in office," but "an attorney should not be disciplined for misconduct committed while serving in a judicial capacity unless that conduct involved a crime, dishonesty, deceit, immorality, or moral turpitude." Florida Bar v. Graham, 662 So.2d 1242, 1244 (Fla.1995). In the present case, even assuming that Mogil's misconduct while a judge did not involve a crime, deceit, immorality, or moral turpitude, as discussed above, some of it involved dishonesty. Thus, as also discussed above, Mogil was appropriately found guilty of violating rule 4-8.4(c) for "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation."
Moreover, because Mogil's dishonesty occurred during his judicial removal proceedings, it additionally amounted to "conduct in connection with the practice of law that is prejudicial to the administration of justice" in violation of rule 4-8.4(d) (emphasis added). The emphasized language was added by this Court in 1994 in recognition of the principle that rule 4-8.4(d) "must be limited in its application to situations involving the practice of law in order to ensure that the First Amendment rights of lawyers are not unduly burdened." In re Amendments to Rules Regulating The Florida Bar, 624 So.2d 720, 721 (Fla.1993). As Mogil certainly had no First Amendment right to be dishonest in his judicial removal proceedings,[2] his misconduct in this regard falls outside the scope of the conduct intended to be protected under the language added to the rule in 1994 and emphasized above. Furthermore, insofar as Mogil was required to be an attorney in order to be a judge in New York (see N.Y. Const. art. VI, § 20(a)), we find that his misconduct during his judicial removal proceedings was necessarily "conduct in connection with the practice of law" under rule 4-8.4(d).
As to Mogil's misconduct being "prejudicial to the administration of justice" under rule 4-8.4(d), this Court has emphasized that the rule "should preclude any conduct prejudicial to the administration of justice." In re Amendments, 624 So.2d at 721 (emphasis original). Dishonesty in judicial removal proceedings certainly falls within the scope of this broad proscription. Indeed, in an attorney discipline case involving a former judge's arguably lesser misconduct in his proceedings before the Judicial Qualifications Commission (i.e., "actions, attitude and activities [that] were often disruptive, scandalous, improper and contemptuous"), this Court approved a referee's recommendation based on a consent judgment that the attorney be found guilty of, among other things, misconduct prejudicial to the administration of justice under rule 4-8.4(d). See Florida Bar v. Graham, 679 So.2d 1181, 1181-82 (Fla.1996). We accordingly approve the referee's recommendation that Mogil be found guilty of violating rule 4-8.4(d).

B. Discipline
Mogil raises three arguments as to discipline relating to (1) aggravation; (2) mitigation; and (3) the recommended sanction.

1. Aggravation

The referee in the present case found in aggravation that Mogil (1) had *312 submitted false evidence or false statements or engaged in other deceptive practices during the disciplinary process; (2) had substantial experience in the practice of law; and (3) had refused to acknowledge the wrongful nature of his conduct. Mogil argues that the first two aggravators do not apply because the misconduct at issue did not occur during the attorney disciplinary process but during the judicial removal process and had nothing to do with the practice of law. We reject these arguments for much the same reasons we rejected Mogil's similar arguments against finding him guilty of violating rule 4-8.4(d), and accordingly approve the first two aggravators found by the referee.
However, Mogil is correct in arguing that the third aggravator (refusal to acknowledge wrongful nature of conduct) does not apply because he has always denied (and continues to deny) the misconduct at issue. Under similar circumstances, this Court has held that "[i]t was improper for the referee to consider in aggravation the fact that [the subject attorney] refused to acknowledge the wrongful nature of his conduct. [The subject attorney's] claim of innocence cannot be used against him." Florida Bar v. Corbin, 701 So.2d 334, 337 n. 2 (Fla.1997) (quoting Florida Bar v. Lipman, 497 So.2d 1165, 1168 (Fla.1986), for proposition that "it is improper for a referee to base the severity of a recommended punishment on an attorney's refusal to admit alleged misconduct or on `lack of remorse' presumed from such refusal"). We accordingly strike the third aggravator found by the referee.

2. Mitigation

As to mitigation, the referee found that Mogil had an absence of any prior disciplinary record and that he had a physical or mental disability or impairment. Mogil now urges additional mitigation but, to the extent he could and should have done so at the disciplinary hearing (which he chose not to attend), he is foreclosed from doing so now. See Florida Bar v. Schreiber, 631 So.2d 1081, 1082 (Fla.1994) ("The referee gave [the subject attorney] every opportunity to explain the [criminal] offense, but he chose not to avail himself of those opportunities."); Florida Bar v. Weed, 559 So.2d 1094, 1096 (Fla.1990) ("[The subject attorney] chose not to take advantage of an opportunity afforded him" to present mitigation); see also Florida Bar v. Furman, 451 So.2d 808, 815 (Fla. 1984) ("Respondent [a nonlawyer in an unlicensed practice of law case] was given an opportunity to consider her options, did so, and chose not to testify or present evidence in mitigation. Having voluntarily waived the right to present such evidence to the referee and this Court, respondent cannot now complain that it would have been rejected [by the referee] anyway.").

3. The Recommended Sanction

With the applicable aggravators and mitigators in mind, the question for this Court becomes whether the misconduct at issue warrants the recommended sanction of disbarment. That New York disbarred Mogil does not control. See Wilkes, 179 So.2d at 197 ("It is clear ... that the rule does not require Florida to follow the foreign judgment as to the discipline imposed thereby."). Rather, as in any other bar disciplinary case:
"Although a referee's recommended discipline is persuasive, [this Court] does not pay the same deference to this recommendation as [it does] to the guilt recommendation because this Court has the ultimate responsibility to determine the appropriate sanction." However, generally speaking, this Court "will not second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in existing caselaw." In making this determination, this Court considers not only caselaw but also the Florida Standards for Imposing Lawyer Sanctions.
Florida Bar v. Temmer, 753 So.2d 555 (Fla.1999) (citations omitted).
*313 We find that the referee's recommendation of disbarment in the present case has a reasonable basis in existing caselaw and standards. For example, in Florida Bar v. Budnitz, 690 So.2d 1239, 1239 (Fla. 1997), the New Hampshire Supreme Court had disbarred an attorney for knowingly making a false statement of material fact in a disciplinary matter. In disciplining the attorney in Florida based on his New Hampshire misconduct, this Court likewise found disbarment to be the appropriate sanction, noting that "[i]t is appropriate for this Court to give significant consideration and weight to the final adjudication of the Supreme Court of New Hampshire." Id. at 1241; see also id. at 1240 (citing Florida Bar v. Graham, 605 So.2d 53, 56 (Fla.1992), for the proposition that "[d]ishonesty and a lack of candor cannot be tolerated by a profession that relies on the truthfulness of its members").[3] Moreover, as cited by the referee at the disciplinary hearing in the present case, standard 5.21 provides in pertinent part that disbarment is appropriate where, as here, "a lawyer in an official or governmental position knowingly misuses the position with the intent to ... cause serious or potentially serious injury to ... the integrity of the legal process."
Mogil urges to the contrary that, under Florida Bar v. Graham, 662 So.2d 1242, 1245 (Fla.1995), his "judicial misconduct does not warrant additional discipline against him as an attorney in view of the judicial discipline he has already received." Significantly, however, this Court in Graham specifically noted that in removing the attorney at issue from judicial office it had explicitly found that he "was not dishonest or venal or guilty of moral turpitude." Id. The same cannot be said in the present case, wherein Mogil at the very least has been found to be dishonest. Mogil also urges that, as in Florida Bar v. Cibula, 725 So.2d 360, 364-65 (Fla.1998), this Court should take into account that his misrepresentations of which he was found guilty were made to a tribunal in connection with a personal matter (as opposed to misrepresentations made to others or misrepresentations made in the context of representing a client). However, while this Court in Cibula took similar facts under consideration, it also ultimately increased the subject attorney's discipline from the recommended sixty-day suspension to a ninety-one-day suspension for making misrepresentations to a court in his personal divorce proceedings, holding as especially pertinent here:
Not only does the law demand truthfulness under oath, but the obligations of our profession demand it. As former Justice Ehrlich has stated, "our profession can operate only if its individual members conform to the highest standard of integrity in all dealings within the legal system."
Id. at 365; see also id. at 364 (noting that discipline imposed in cases involving misrepresentations by an attorney to a court in a personal matter have ranged from disbarment to public reprimand). The present case involves a recommended discipline *314 of disbarment (not a sixty-day suspension), as well as other misconduct and aggravators not present in Cibula. Thus, as to the severity of the sanction imposed, we find Cibula distinguishable and not controlling in the present case.

CONCLUSION
Based on the foregoing analysis, we approve the referee's report except for the aggravator that Mogil had refused to acknowledge the wrongful nature of his conduct, which we strike. Marc Bernard Mogil is hereby disbarred without leave to apply for readmission to The Florida Bar for five years. The disbarment will be effective thirty days from the filing of this opinion so that Mogil can close out his practice and protect the interests of existing clients. If Mogil notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Mogil shall accept no new business from the date this opinion is filed unless and until he is readmitted to The Florida Bar. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Marc Bernard Mogil in the amount of $854.25, for which sum let execution issue.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] Mogil's reliance on In re Davey, 645 So.2d 398 (Fla.1994), in this regard is misplaced. In Davey, this Court held in the judicial discipline context that allegations regarding lack of candor had to be formally charged and supported by particularized findings before they could be used as a basis for the reprimand or removal of a judge, specifying that "[r]ather than showing simply that a judge made an inaccurate or false statement under oath, the [Judicial Qualifications] Commission must affirmatively show that the judge made a false statement that he or she did not believe to be true." Id. at 407. Even assuming this Davey standard to be higher than the "deliberate or knowing" standard enunciated in Fredericks, we find that it is inapplicable in the present case. Davey involved neither attorney discipline, a foreign disciplinary proceeding, the operation of rule 3-4.6, a violation of rule 4-8.4(c), nor charged and proven misconduct involving dishonesty, fraud, deceit, or misrepresentation; rather, it involved judicial discipline and uncharged and unparticularized findings regarding a judge's lack of candor before the Judicial Qualifications Commission.
[2] As held by another jurisdiction in the attorney discipline context:

[The subject attorney's] third argument is that his constitutional right to free speech was violated by the New York disciplinary action. We reject this argument out of hand because, simply stated, an attorney has no First Amendment right to lie to a court.... Even if an attorney's statement of a legal position may be entitled to First Amendment protection, a deliberate misstatement of fact to a court surely is not protected, just as obscenity or "fighting words" are not protected. We know of no case that holds otherwise; indeed, we would be astonished to find one.
In re Benjamin, 698 A.2d 434, 441 (D.C.1997) (footnotes omitted).
[3] In recommending disbarment, the referee in Budnitz had found by clear and convincing evidence that the subject attorney had violated several Rules Regulating The Florida Bar, including rule 4-8.1(a) (prohibiting lawyers from "knowingly making a false statement of material fact" in connection with a disciplinary matter) and, as in the present case, rule 4-8.4(c) ("A lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."). See Florida Bar v. Budnitz, 690 So.2d 1239, 1240 n. 2 (Fla.1997). This Court approved the referee's report, but only to the extent that it found the subject attorney guilty of violating rule 4-8.1(a), holding that "[w]e need not address the remainder of the report because the nature of this single violation dictates that we disbar [the subject attorney]." Id. at 1241. That the present case is based on Mogil's violation of rules 4-8.4(c) and (d) (as opposed to rule 4-8.1(a)) is inconsequential, as the underlying misconduct is essentially identical to the misconduct at issue in Budnitz. Also, as discussed earlier in this opinion, it is equally inconsequential that the findings in Budnitz were based on clear and convincing evidence, while the findings in the present case are based on a preponderance of the evidence. See Florida Bar v. Friedman, 646 So.2d 188, 190 (Fla.1994).