OPINION OF THE COURT
Michael R. Juviler, J.
This is a decision explaining a ruling on evidence that was *325 rendered during a nonjury trial on charges of murder in the second degree (Penal Law § 125.25 [1], [2]).[1] The court held that on the facts of this case the defendant’s statement to the police after his arrest was admissible as defense evidence.
At the trial the defense conceded that the defendant had stabbed the victim, Dwight Hines, causing his death. The issues presented to the trier of fact were:
(1) Whether the defendant had intended to kill the deceased, as was alleged in one of the counts of murder in the second degree. The defendant contended that he had intended merely to cause serious physical injury, and therefore was not guilty of murder in the second degree (Penal Law § 125.25 [1]), which requires an intent to cause death, but was guilty only of manslaughter in the first degree (Penal Law § 125.20 [1]).
(2) Whether, if the trier of fact found that the defendant had intended to cause Hines’s death, the charge of intentional murder should be mitigated to manslaughter in the first degree by the affirmative defense of extreme emotional disturbance (Penal Law § 125.25 [1] [a]) on the theory that Hines had provoked the defendant to lose control by what the defendant believed was a public insult to the defendant’s common-law wife.
The evidence established that the defendant, Jose Morales, was an alcoholic, jealous of his common-law wife, Gladys Rosado, and verbally abusive of her when he was intoxicated, sometimes accompanying his drunken curses with shoves.
On the evening in question, the defendant had (in his words) “a couple of beers” on his way home from his job as a laborer in the construction industry. While he, Ms. Rosado, Mr. Hines, and other residents of the building where they lived were sitting on the stoop, the defendant stabbed Mr. Hines because he perceived that Hines had insulted Ms. Rosado in front of everyone on the stoop. Just before the stabbing, the defendant was heard to say, “I don’t give a f * * * if I stab him.”
After the stabbing, the victim ran into the building and went up the stairs to the third floor, where he died of stab wounds to the heart, a lung, and an artery in the left arm.
The defendant ran down the street, pursued by a neighbor. The defendant waved the knife wildly, cursed at the neighbor, and said, “I stabbed him, so what?”
*326 The defendant escaped. He telephoned a daughter of Ms. Rosado, Jackie Rosado, and said to her, “I just stabbed this guy. Will you go and see if he’s all right?” He then drank a pint of Baccardi and went to Jackie Rosado’s home, where he was arrested, drunk, four hours after the stabbing.
In the police car on the way to the precinct house he spontaneously blurted out the statement at issue: “/ should have killed him. This guy had no business talking to my wife like that. She’s my damn woman.” (Emphasis added.)
The People did not dispute the making of this statement, its contents, or the circumstances under which it was made. The People had given notice at arraignment pursuant to CPL 710.30 (1) of their intent to offer this statement in evidence at trial. This notice was effectively withdrawn during a pretrial hearing on a motion to suppress evidence, and the People did not offer the statement at the trial. Instead, the defendant offered it during his case.[2]
The People opposed receipt of this statement as defense evidence, on the ground that it was “hearsay”, “self-serving”, and not admissible under the excited-utterance exception to the hearsay rule because it was made after the defendant had had an opportunity to reflect and fabricate. The People misconstrued the role of the evidence.
The statement was not offered in evidence as an excited utterance, or as hearsay at all. It was offered as circumstantial evidence of the defendant’s present state of mind and, as such, circumstantial evidence of his earlier state of mind, at the time he stabbed the victim.
Primarily, the statement was offered as circumstantial evidence that he had not intended to kill Dwight Hines. The statement “I should have killed him. This guy had no business talking to my wife like that. She’s my damn woman” supported reasonable inferences that the defendant currently believed that he had not killed the victim (perhaps because Hines had not fallen to the ground but had run into the building); that earlier, at the time of the stabbing, the defendant had not meant to kill him; and that the defendant currently believed that the victim deserved to die, so the defendant should have killed him instead of merely wounding him. Interpreted that *327 way, the statement was circumstantial evidence of an innocent state of mind for the type of murder in the second degree that involves an intent to Mil.
The statement had a second purpose as evidence of the defendant’s state of mind at the time of the stabbing. It was circumstantial evidence that the defendant currently believed that what Hines had said to Gladys Rosado was grossly improper. That current belief was circumstantial evidence that the defendant had had the same belief at the time of the attack, a belief that induced an extreme emotional disturbance. That tended to support the subjective elements of the affirmative defense of extreme emotional disturbance, which include a belief and an extreme emotional disturbance (see, Penal Law § 125.25 [1] [a]; People v Casassa, 49 NY2d 668, cert denied 449 US 842).
For neither purpose was the statement hearsay, because in neither case was the statement offered in evidence for its truth, that is, offered to prove any of the past or present facts mentioned in the statement. It was not offered to prove that the defendant should have Mlled Hines (a meaningless statement if offered for its truth, since the defendant had killed Hines); or that Hines should not have said what he said toGladys Rosado; or that Gladys Rosado was the defendant’s wife or “woman” (see, People v Davis, 58 NY2d 1102, 1103 [defendant’s evidence that deceased said “Shoot the bastards” during the homicidal incident was not excludable as hearsay, because it was not offered to prove the truth of anything in the deceased’s statement]).
“A statement that is not used to prove the truth of the matter it asserts but rather [is used] as the basis of an inference for another relevant fact does not come within the hearsay rule” (Fisch, New York Evidence § 763, at 453 [2d ed]; see also, Prince, Richardson on Evidence § 8-611 [Farrell 11th ed]). Thus, a statement by a defendant that is offered in evidence solely as circumstantial evidence of the defendant’s state of mind, and not to establish a past or present fact asserted in that statement, is not hearsay (People v Reynoso, 73 NY2d 816, 819; People v Ricco, 56 NY2d 320, 328 [defendant’s statement, offered by the defense to show a long-standing delusion, was not hearsay, “since it was not offered for the truth of the matter asserted”]; People v Boyd, 250 AD2d 350, 351 [2d Dept 1998] [at a trial for criminal possession of a stolen car, the defendant’s testimony about his conversation with the person who he claimed had sold him the car “was not hearsay and was *328 circumstantial evidence of the defendant’s state of mind” at the time he took possession of the car and at the time of the possession charged in the indictment]; Prince, Richardson on Evidence § 8-611 [Farrell 11th ed]). For that reason, a defendant’s statement made after a homicide, while not admissible to prove the truth of past or present facts contained in it, “may be received to show the declarant’s state of mind at the time the statement was made” (People v Reynoso, supra, at 819).
Although state-of-mind evidence is often referred to as hearsay, and some of it is, not all evidence of state of mind is hearsay. “There are two types of state of mind "exceptions’ to the hearsay rule. The first is not an exception because it really is not hearsay in the first place. The statement does not come in for its truth; its mere utterance provides circumstantial evidence of something else” (Barker and Alexander, Evidence in New York State and Federal Courts § 803 [1].1 [c]; § 801.1 [d] [1996]). That is the type of state-of-mind evidence at issue here. The statement is admissible because, as the Court of Appeals has said, “whether it is not catalogued as hearsay at all or termed an ‘apparent exception’ to the hearsay rule (see Richardson, Evidence [10th ed], § 205), a relevant extrajudicial statement introduced for the fact that it was made rather than for its contents, as here for the purpose of * * * proving its maker’s state of mind, is not interdicted by the hearsay rule” (see, People v Ricco, supra, at 328).
In People v Hale (245 AD2d 576), the defendant’s statements to the police while he was being placed under arrest for raping and assaulting his wife, expressing to the police his feelings regarding her extramarital affair — the subject that the couple had been arguing about at the time of the attack — were admissible because they “were probative on the issue of defendant’s state of mind and intent” at the time of the alleged crime. A similar role was advanced for the statement in the present case.
While a statement of a defendant to the police usually is introduced in evidence against the defendant, as in Hale (supra), there is no reason why if the same requirements of evidence are met the statement may not be admitted on behalf of the defendant (see, People v Ricco, 56 NY2d 320, supra; cf., United States v DiMaria, 727 F2d 265 [defendant’s statement when approached by FBI agents, while he was in possession of a large quantity of stolen untaxed cigarettes, was admissible on the defendant’s behalf to negate the state of mind required *329 for the crime of possession of stolen cigarettes, an offense less serious than possession of untaxed cigarettes]).
In People v Bull (218 AD2d 663, Iv denied 87 NY2d 899), the Court held that at a trial for rape alleged to have been committed against children who later tested positive for venereal disease, the defendant should have been permitted to testify that after learning that he was under investigation for abusing the complainants, he had volunteered to be tested also. The written report of the result of his blood test was hearsay, but his offer to take the test was not hearsay, and it was circumstantial evidence of an innocent state of mind regarding the alleged rape. Analogously, the defendant Morales’s statement after his arrest was admissible as circumstantial evidence of (a) an innocent mens rea for intentional murder, and (b) the state of mind required for the affirmative defense of extreme emotional disturbance.
Adthough used as defense evidence, the statement was not “self-serving” in an impermissible sense, because the statement was not introduced for its truth (cf., People v Reynoso, supra, 73 NY2d, at 819). While it was “self-serving” in the sense that it was helpful to the defense, it had no signs of having been contrived. It was blurted out without external inducement, and its contents had the ring of genuineness. The principal portion, “I should have killed him”, was not the kind of statement that is readily contrived by a drunken person, particularly by one as unsophisticated and unsubtle as the defendant. Intoxication can negate truthfulness and accuracy, but this statement was not admitted for its truth, and its relevance did not depend on the truth of its contents. In addition, it included a tacit admission of a serious crime, assault in the first degree (see, Penal Law § 120.10 [1]). Moreover, it was consistent with all of the statements the defendant made immediately before and after the stabbing.
If the defendant had said to the police, “I didn’t mean to kill him”, and that statement had been offered to negate an intent to kill, that would have been “inadmissible self-serving hearsay” (see, People v Reynoso, supra, at 819), an example of the second kind of state-of-mind evidence referred to by Barker and Alexander: It would have been a statement about a past fact — the defendant’s lack of an intent to cause death— introduced to prove that fact, therefore requiring an exception to the hearsay rule, such as the exception for an excited utterance (see, People v Reynoso, supra [statement of defendant after the homicide that he had believed that the victim was *330 armed when he shot the victim was not admissible for its truth, that is, to show that he had had that belief at the time of the shooting]; People v Sostre, 51 NY2d 958 [defendant’s statement that complainant “shot him for nothing” was not admissible for its truth, because not an excited utterance]; People v Vasquez, 88 NY2d 561, 580 [defendant Dalton’s statement in a 911 call that the man he shot had “smacked” him in the head with a gun, and the defendant “took the gun off him”, found not to be an excited utterance, was not admissible as proof of Dalton’s state of mind at the time of the shooting, because it was made after that event, “and its relevance to defendant’s prior mental state depended entirely on the truth of its contents”]).
The statement of defendant Morales, like the statements in Reynoso (supra), Sostre (supra), and Vasquez (supra), was not an excited utterance because at the time he made it his senses were no longer under the immediate impact of the confrontation on the stoop, and he had had ample opportunity to reflect and contrive the statement in the four hours since the stabbing (see, People v Brown, 70 NY2d 513; People v Vasquez, supra). But the statement’s inadmissibility as an excited utterance does not mean that it must be excluded as hearsay. The “relevance” of the statement to the defendant’s “prior mental state” did not depend on “the truth of its contents”, and it was not a statement about a past or present fact offered to prove that fact (see, People v Vasquez, supra, at 580).
The court does not mean to suggest that statements made by defendants after arrest are normally admissible as defense evidence. Rarely will the rules of evidence allow such use of a defendant’s postarrest statement. But if the requirements are met, the evidence should be received, and its weight should be left to the trier of fact (cf., People v Davis, 58 NY2d 1102, 1103, supra; People v Boyd, 256 AD2d 350 [2d Dept 1998], supra).[3]

. The court found the defendant not guilty of both counts of murder and guilty of manslaughter in the first degree (Penal Law § 125.20 [1]).

. The statement came in through the defendant’s testimony. While that gave the People an opportunity to cross-examine the declarant (see, People v Hughes, 228 AD2d 618), that was not necessary to the court’s decision on admissibility of the evidence; had the defendant not testified, the statement could have been introduced through other means.

. In view of its verdict acquitting the defendant of intentional murder because of a reasonable doubt about an intent to kill, the court was not required to consider the affirmative defense. Nevertheless, the court announced findings on the affirmative defense, because both parties had devoted so much of the trial to it. The court found that the affirmative defense was not established by a preponderance of the evidence (see, Penal Law § 25.00 [2]; § 125.25 [1] [a]).